[No. B057093. Second Dist., Div. Two. Feb. 4, 1992.]

WOUTER BLOM, Plaintiff and Appellant, v.
N.G.K. SPARK PLUGS (U.S.A.), INC., et al., Defendants and
Respondents.

384

COUNSEL

Dunlop & Haslam and George S. L. Dunlop for Plaintiff and Appellant.

O'Melveny & Meyers, Richard C. White and Douglas E. Dexter for Defendants and Respondents.

## OPINION

**FUKUTO, Acting P. J.**—Plaintiff Wouter Blom appeals from summary judgment in favor of defendants, N.G.K. Spark Plugs (U.S.A.), Inc. (hereafter N.G.K.), and its parent corporation (collectively defendants), in an action for wrongful discharge from employment.[1] The judgment followed summary adjudication that plaintiff's wrongful discharge causes of action were preempted by the Fair Employment and Housing Act (Gov. Code, § 12900 et seq; hereafter FEHA). The Supreme Court has since rejected that construction of the FEHA. Defendants now seek to sustain the judgment on the ground that, apart from the FEHA's provisions (Gov. Code, § 12940, subd. (f)), there exists no cause of action for discharge in retaliation for an employee's seeking to correct employment discrimination. We conclude, however, that such a common law cause of action does arise, under well recognized public policy and case law. The judgment therefore will be reversed.

[1]The record on appeal does not contain a judgment, and the notice of appeal addresses the order granting summary judgment, as well as other nonappealable orders which are reviewable on appeal from final judgment. In the interests of justice, we construe the notice of appeal and the order granting summary judgment to encompass the judgment the court directed be prepared. (*Avila* v. *Standard Oil Co.* (1985) 167 Cal.App.3d 441, 445 [213 Cal.Rptr. 314].)

## FACTS

Plaintiff's complaint alleged three causes of action: wrongful discharge in violation of public policy, breach of express and implied employment contract, and defamation. The validity of the defamation claim is not here at issue. Plaintiff's tortious wrongful termination claim alleged that in October 1987 plaintiff, apparently a Caucasian, was hired as personnel manager by N.G.K., a California subsidiary of a Japanese corporation. Plaintiff was told to "Americanize" N.G.K.'s staff, which was disproportionately Japanese. However, in the ensuing months N.G.K.'s executives stoutly resisted plaintiff's suggestions and efforts to diversify personnel and, perhaps more important, to eliminate discrimination in wages and other benefits in favor of the Japanese employees, as well as discrimination against women employees. These efforts included attempts to secure compliance with the FEHA and with title VII of the federal Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.).

Plaintiff's efforts were met not just with rejection but with personal retaliation with respect to his salary, working conditions and performance evaluations. Ultimately plaintiff was terminated because of his antidiscrimination efforts and defendants' resistance to them.[2]

Plaintiff's second cause of action realleged the facts of his hiring and termination, and further alleged that when he was hired N.G.K., by various words and acts, agreed that plaintiff would not be terminated or retaliated against for carrying out his duties in accordance with California and federal law, nor be terminated without good cause. Plaintiff's discharge violated this agreement.

Defendants moved for summary adjudication (Code Civ. Proc., § 437c, subd. (f)) that both causes of action were groundless, based on two contentions: (1) that plaintiff had not been discharged but had resigned; (2) that California common law provided no cause of action for wrongful discharge in retaliation for objecting to sex or national origin discrimination. The trial court ruled the first issue presented a triable issue of fact as to whether plaintiff had been constructively terminated. The court recharacterized the second issue to be whether the FEHA preempts common law causes of action for wrongful discharge based on retaliation for attempting to enforce the public policies declared in the FEHA. On this score, the court squarely

---

[2]Plaintiff filed a complaint under the FEHA with the Department of Fair Employment and Housing concerning his treatment. Because the parties do not rely on the content or disposition of this complaint as affecting plaintiff's entitlement to prosecute the causes of action here at issue, we do not inquire into that subject.

concluded that the public policies in question were sufficiently strong to support a wrongful discharge action of the type endorsed in *Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314] (hereafter *Tameny*). (See also *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654, 665-669 [254 Cal.Rptr. 211, 765 P.2d 373] [hereafter *Foley*]). However, the court further ruled that the FEHA indeed preempted these causes of action. For this proposition the court cited *Ficalora* v. *Lockheed Corp.* (1987) 193 Cal.App.3d 489 [238 Cal.Rptr. 360] (hereafter *Ficalora*), while noting that a contrary Court of Appeal decision had been granted review by the Supreme Court.

Defendants then moved for summary judgment on all causes of action. Plaintiff countered with a motion to amend the wrongful discharge causes. The court denied plaintiff's motion and granted defendants'.

### DISCUSSION

Following the trial court's summary adjudication that plaintiff's claims were barred because preempted by the FEHA, the Supreme Court decided the case the trial court had noted was under review: *Rojo* v. *Kliger* (1990) 52 Cal.3d 65 [276 Cal.Rptr. 130, 801 P.2d 373] (hereafter *Rojo*).[3] *Rojo* held that the FEHA neither expressly nor impliedly preempted other rights of action on account of employment discrimination arising under state law, including common law. (*Rojo, supra*, at pp. 73-82.) Expressly disagreeing with the contrary construction of the FEHA in *Ficalora, supra*, the Supreme Court concluded: "While the FEHA conferred certain new rights and created new remedies, its purpose was not to narrow, but to expand the rights and remedies available to victims of discrimination. [Citations.] Under the act, plaintiffs are free to seek relief for injuries arising from discrimination in employment under *any* state law, without limitation." (*Rojo, supra*, 52 Cal.3d at p. 82.)

 Faced with this nullification of the trial court's rationale, defendants seek to save the judgment on the related theory that there exists no common law right of action for discharge in retaliation for seeking to correct or remedy an employer's sex or national origin discrimination. In *Rojo* the Supreme Court reserved passing on the validity of a "retaliation" cause of action, such as had been dismissed in *Ficalora, supra*, because none was presented. (*Rojo, supra*, 52 Cal.3d at p. 82, fn. 10.) Subsequently, another

---

[3]*Rojo* came down on December 20, 1990, several months after the summary adjudication order, but early in the briefing of the motions for summary judgment and to amend the complaint, which were not heard until 47 days later. Nonetheless, neither plaintiff nor defendants ever referred to the high court's decision in their numerous subsequent filings. We are heartily unimpressed with all counsel's performance in this regard.

Court of Appeal ruled in favor of a retaliation cause of action. (*Carmichael v. Alfano Temporary Personnel* (1991) 233 Cal.App.3d 1126, 1132 [285 Cal.Rptr. 143].) For the following reasons, we find that plaintiff's causes of action do subsist at common law.

Plaintiff's first cause of action, for tortious wrongful discharge, derives from *Tameny, supra,* 27 Cal.3d 167. *Tameny* elucidated and applied "California's common law wrongful discharge doctrine" (*id.* at p. 179, fn. 12), and held that a tort claim arose in favor of an employee who had been discharged for refusing his employer's demands to violate the law. Rejecting the employer's objection that such a discharge was not prohibited by statute, the court discerned that when a discharge "contravenes the dictates of public policy" it is actionable in tort. (*Id.* at pp. 177-178.)

In the present case plaintiff grounds the wrongfulness of his termination in public policies whose strength and sufficiency cannot be doubted. To the extent that plaintiff's claim is based upon defendants' alleged practice of and refusal to redress sex discrimination, the Supreme Court already has held that the transgressed public policy supports a *Tameny* cause of action. *Rojo,* a sex discrimination and harassment case, found such an actionable policy appeared in article I, section 8 of the California Constitution (hereafter section 8), which provides that "A person may not be disqualified from entering or pursuing a business, profession, vocation, or employment because of sex, race, creed, color, or national or ethnic origin." (*Rojo, supra,* 52 Cal.3d at pp. 89-91.) And the same status must also attach to section 8's policy against national origin discrimination. As with sex discrimination, this policy " 'inures to the benefit of the public at large rather than to a particular employer or employee.' " (*Rojo, supra,* 52 Cal.3d at p. 90, quoting *Foley, supra,* 47 Cal.3d 654, 669.) In present times, the importance to our multi-ethnic economy of equal economic opportunity needs no elaboration. Moreover, the inclusiveness of the policies asserted well appears in the present case, in which a member of the male Caucasian "majority" allegedly sought to insure that sex and national origin discrimination did not make second-class workers of himself and others.

Defendants suggest, however, that plaintiff may not invoke section 8's public policy regarding national origin discrimination, because that particular prohibition did not predate the FEHA. But the notion that the FEHA only "saves" preexisting common law causes of action also was rejected in *Rojo.* In this connection the Supreme Court stated: "Because the FEHA . . . expressly disclaims any intent to displace other relevant state laws, no resort to interpretative aids is required and the existence vel non of a preexisting cause of action for the particular discrimination is irrelevant. . . . Under the

act, plaintiffs are free to seek relief for injuries arising from discrimination in employment under *any* state law, without limitation." (*Rojo, supra,* 52 Cal.3d at p. 82.)

The remaining question is whether, in light of these public policies, there exists a common law cause of action for discharge in "retaliation" for seeking to rectify violations. We believe that existing case law compels an affirmative answer.

As a factual matter, "retaliation" has long provided a basis for wrongful discharge cases, including *Tameny* itself. In *Tameny* the plaintiff alleged that although he had been fired ostensibly for incompetence, " 'the sole reason' for plaintiff's discharge was his refusal to commit" acts violating the anti-trust laws. (*Tameny, supra,* 27 Cal.3d at p. 171.)[4] The court later also referred to the discharge as "coercing" the employee to act illegally. (*Id.* at p. 178; see *Rojo, supra,* 52 Cal.3d at p. 91.) But realistically, the nexus between the employer's illegal purposes and the discharge was as much "retaliation" as "coercion."[5]

■ In *Rojo,* moreover, the Supreme Court confirmed that the factual predicates of a *Tameny* cause of action are not inflexible. The plaintiffs in *Rojo* alleged they were terminated because they refused to acquiesce in their employer's sexual harassment. Upholding plaintiffs' entitlement to pursue a *Tameny* cause of action, the court stated: "[W]e reject defendant's argument that *Tameny* claims should be limited to situations where, as a condition of employment, the employer 'coerces' an employee to commit an act that violates public policy, or 'restrains' an employee from exercising a funda-mental right, privilege or obligation. The contention is without merit. Al-though decided in the factual contexts of coercion (*Tameny* [citation]) and restraint (*Foley* [citation]), neither *Tameny* nor *Foley* excludes wrongful discharge claims based solely on sex discrimination or sexual harassment. To the contrary, the cases strongly imply that an action for wrongful discharge will lie when, as here, the basis of the discharge contravenes a fundamental public policy." (*Rojo, supra,* 52 Cal.3d at p. 91.)

■ In the present case, the alleged basis of plaintiff's discharge was "retaliation" for his efforts to require defendants to conform to employment

---

[4]Similarly, in *Petermann v. International Brotherhood of Teamsters* (1959) 174 Cal.App.2d 184 [344 P.2d 25], which was heavily relied upon in *Tameny,* the plaintiff was fired after he defied his *employer's instruction to commit perjury. The complaint alleged* "as the reason for his discharge his failure to commit perjury," and "that his discharge on the day following the hearing was for 'The purpose of punishing plaintiff for testifying truthfully' . . . ." (*Peter-mann v. International Brotherhood of Teamsters, supra,* at pp. 187, 189.)

[5]Indeed, like the plaintiff in *Tameny,* plaintiff here alleges that he first was pressured and threatened about his attempts to secure compliance with the law. When he did not desist, the retaliatory acts that culminated in his discharge began.

discrimination laws and policies. That such retaliation frustrates and contravenes the underlying public policy, so as to give rise to a *Tameny* cause of action, was articulately recognized in *Hentzel* v. *Singer Co.* (1982) 138 Cal.App.3d 290 [188 Cal.Rptr. 159, 35 A.L.R.4th 1015] (hereafter *Hentzel*). Plaintiff there alleged he had been discharged in retaliation for efforts to obtain a "smoke-free" environment from his employer. After reviewing enactments prescribing workers' rights and employers' obligations concerning a healthful working environment, then Presiding Justice Grodin explained why plaintiff's factual allegations stated a *Tameny* cause of action: "It requires little analysis to perceive that the legislative purpose underlying these provisions would be substantially undermined if employers were permitted to discharge employees simply for protesting working conditions which they reasonably believe constitute a hazard to their own health or safety, or the health or safety of others. Achievement of the statutory objective—a safe and healthy working environment for all employees—requires that employees be free to call their employer's attention to such conditions, so that the employer can be made aware of their existence, and given opportunity to correct them if correction is needed. The public policy thus implicated extends beyond the question of fairness to the particular employee; it concerns protection of employees against retaliatory dismissal for conduct which, in light of the statutes, deserves to be encouraged, rather than inhibited." (*Hentzel, supra,* 138 Cal.App.3d at p. 298.)[6]

In sum, *Tameny* and its progeny confirm, implicitly and explicitly, that discharge of an employee in retaliation for resisting employer violations of laws that secure important public policies contravenes those policies, and gives rise to a common law action in tort. (Accord, *Collier* v. *Superior Court* (1991) 228 Cal.App.3d 1117, 1127 [279 Cal.Rptr. 453] ["Retaliation by an employer when an employee seeks to further . . . well-established public policy . . . seriously impairs the public interest . . . ."].) Such conflict and contravention certainly appear in this case, in which an employer's personnel manager alleges he was discharged because he insisted on bringing illegal employment discrimination to the employer's attention and eliminating it. On this score, we necessarily part company with *Ficalora, supra,* 193 Cal.App.3d 489, 492-493, which based its rejection of such a cause of action on a restrictive construction of the FEHA that has been rejected by *Rojo, supra,* 52 Cal.3d at pages 77-82.

■ The foregoing discussion of plaintiff's tortious wrongful discharge cause of action responds as well to defendants' identical arguments in

---

[6]*Hentzel* went on to hold that the anti-retaliation provisions of the California Occupational Safety and Health Act of 1973 (Lab. Code, § 6310 et seq.) neither preempted the cause of action nor required exhaustion of administrative remedies. Subsequently, the Supreme Court read the FEHA the same way. (*Rojo, supra,* 52 Cal.3d at pp. 73-82 [preemption], 82-88 [exhaustion].)

opposition to plaintiff's second cause of action. It bears noting, however, that that cause of action, for breach of contract, legally differs from the *Tameny* cause, and was not even theoretically vulnerable to the arguments posed against it.

Plaintiff's second cause of action alleges defendants promised, and then breached their promise, that they would not discharge plaintiff for performing his duties as personnel manager consistent with the law. Although the facts of defendants' alleged breach of contract coincide with their alleged violation of public policy, the legal basis of the contract cause of action is the parties' agreement about grounds for termination, rather than extrinsic public policies infringed by termination. (Cf. *Foley, supra,* 47 Cal.3d at p. 683; *Tameny, supra,* 27 Cal.3d at pp. 175-176.) Hence, this cause of action was not dependent upon identification of a strong supporting public policy. Rather, the alleged agreement between employer and employee stands on its own; it "will be enforced so long as it does not violate legal strictures external to the contract . . . ." (*Foley, supra,* 47 Cal.3d at p. 677.)

## DISPOSITION

The judgment is reversed. Plaintiff shall recover costs.

Nott, J., and Hart, J.,* concurred.

Respondents' petition for review by the Supreme Court was denied April 29, 1992.

---

*Judge of the Municipal Court for the Los Angeles Judicial District sitting under assignment by the Chairperson of the Judicial Council.