[No. E029143. Fourth Dist., Div. Two. Feb. 14, 2002.]

FREDERICK PHILLIPS, Plaintiff and Appellant, v.
ST. MARY REGIONAL MEDICAL CENTER, Defendant and
Respondent.

## COUNSEL

Kampf, Schiavone & Associates and James L. Price for Plaintiff and Appellant.

Foley & Lardner, Richard M. Albert, Muira K. Mishra and Michael A. Graham for Defendant and Respondent.

## OPINION

**GAUT, J.—**

### 1. *Introduction*

Plaintiff Frederick Phillips filed a wrongful termination action against defendant St. Mary Regional Medical Center, a nonprofit religious corporation, alleging that defendant retaliated against him for filing a complaint for race and sex discrimination with the Department of Fair Employment and Housing (DFEH) and the Equal Employment Opportunity Commission (EEOC). Plaintiff claimed that defendant violated the public policy set forth in the Fair Employment and Housing Act (FEHA),[1] article I, section 8 of the California Constitution (Section 8), and title VII of the Civil Rights Act of 1964 (Title VII).[2] In response to a demurrer filed by defendant, the trial court found, as a matter of law, that plaintiff failed to state a cause of action for wrongful termination because the cited authorities were inadequate to overcome the religious-entity exemption under the preamended version of FEHA.

In challenging the court's decision sustaining defendant's demurrer, plaintiff argues that all three sources of public policy were adequate to support his claims for wrongful termination. Although we reject plaintiff's reliance on FEHA, which at the time of plaintiff's termination completely exempted religious entities from liability under its provisions, we agree with plaintiff that Section 8 and Title VII are alternative sources of fundamental and well-established public policy sufficient to support plaintiff's common law cause of action for wrongful termination. Accordingly, we reverse the trial court's judgment.

### 2. *Background*

In November of 1995, plaintiff began his employment as a social worker at St. Mary Regional Medical Center.

---

[1] Government Code section 12900 et seq.
[2] Title 42 United States Code section 2000e et seq.

In January of 1998, plaintiff filed a complaint with DFEH for race and sex discrimination. In his complaint, plaintiff alleged that, because he was an African-American male, defendant subjected him to discriminatory treatment with regards to certain employment benefits, including pay raises, job duties, and family care and medical leave under the Family Rights Act.[3] On August 19, 1998, plaintiff and defendant entered a settlement agreement resolving the allegations of discrimination.

Less than three months later, on November 9, 1998, defendant terminated plaintiff's employment at the medical center.

In November of 1998, plaintiff filed another complaint with DFEH alleging that defendant suspended and later terminated him because of his earlier complaint for race and sex discrimination. Defendant informed plaintiff that the reason for its employment decision was plaintiff's poor judgment in transferring a patient to another facility.

On May 24, 1999, plaintiff filed his original complaint for the following causes of action: breach of implied contract; breach of the covenant of good faith and fair dealing; retaliation in violation of FEHA; and wrongful termination in violation of public policy. Defendant filed its motion for summary judgment or summary adjudication on the ground that plaintiff's at-will employee status barred his claims for breach of implied contract and breach of the covenant of good faith and fair dealing. Defendant also asserted that it was exempt under FEHA as a nonprofit religious corporation. As to plaintiff's final cause of action, defendant noted that plaintiff failed to identify a particular public policy. The trial court granted defendant's motion for summary adjudication as to plaintiff's first three causes of action, but denied the motion as to the last cause of action for wrongful termination in violation of public policy. The court granted plaintiff leave to amend his complaint to identify a particular public policy.

On April 19, 2000, plaintiff filed his first amended complaint for wrongful termination in violation of public policy under FEHA, Section 8, and Title VII. In his complaint, plaintiff alleged that defendant terminated him in retaliation for filing a complaint with DFEH and EEOC for race and sex discrimination.

Defendant demurred to plaintiff's first amended complaint on the ground that plaintiff failed to plead facts sufficient to state a cause of action. In support of its demurrer, defendant made the following arguments: FEHA could not support plaintiff's public policy claim because defendant was

---

[3]Government Code section 12945.1 et seq.

exempt from FEHA as a matter of law; Section 8 did not provide the basis for a wrongful termination claim based on retaliation; and Title VII did not apply because plaintiff failed to file his complaint with the EEOC.

At the hearing on August 29, 2000, the trial court noted that plaintiff's complaint included allegations that he had filed claims with both DFEH and EEOC. During the same hearing, the trial court noted that the parties had failed to provide adequate briefing on how the Legislature's recent amendment limiting the religious-entity exemption under FEHA affected plaintiff's claim for wrongful termination in violation of public policy. On this subject, the court requested that the parties submit supplemental briefing.

In his supplemental brief, plaintiff argued that the court should consider California's current public policy, as manifested in the amended version of FEHA, because defendant should have foreseen that the Legislature would limit the religious-entity exemption. Defendant responded that the amended version of FEHA could not serve as the basis of plaintiff's wrongful termination in violation of public policy cause of action because the amendments could not be applied retroactively, and because religious-entity liability was not the firmly established public policy in California at the time of plaintiff's termination.

After receiving all further briefing from the parties, the trial court sustained defendant's demurrer without leave to amend.

### 3. *Standard of Review*

On appeal from a judgment of dismissal following the sustaining of a demurrer, we exercise our independent judgment in determining whether the complaint states, or can be amended to state, a cause of action as a matter of law.[4] In making this determination, we assume the truth of all properly pleaded material facts.[5]

### 4. *Wrongful Termination in Violation of Public Policy*

The tort cause of action for wrongful termination in violation of public policy provides a vehicle for recourse that otherwise would be unavailable under general rules of the at-will employment doctrine.[6] First recognized by the California Supreme Court in *Tameny v. Atlantic Richfield*

---

[4]*Crowley v. Katleman* (1994) 8 Cal.4th 666, 672 [34 Cal.Rptr.2d 386, 881 P.2d 1083].

[5]*Crowley v. Katleman, supra,* 8 Cal.4th at page 672; *Sunset Drive Corp. v. City of Redlands* (1999) 73 Cal.App.4th 215, 218 [86 Cal.Rptr.2d 209].

[6]*Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 887 [66 Cal.Rptr.2d 888, 941 P.2d 1157]; *Gantt v. Sentry Insurance* (1992) 1 Cal.4th 1083, 1089 [4 Cal.Rptr.2d 874, 824 P.2d

*Co.*,[7] this public policy exception allows an employee to bring a tort cause of action against an employer who terminates an at-will employment on a ground that violates fundamental public policy.[8] The exception is based on the principle that, although an employer may terminate an at-will employee for no reason, or any arbitrary or irrational reason, the employer has no power to terminate the employee for a reason contrary to the law or fundamental public policy.[9]

Despite broad acceptance of the public policy exception, "[t]he difficulty . . . lies in determining where and how to draw the line between claims that genuinely involve matters of public policy, and those that concern merely ordinary disputes between employer and employee. This determination depends in large part on whether the public policy alleged is sufficiently clear to provide the basis for such a potent remedy."[10]

To support a wrongful discharge claim, the policy must be "(1) delineated in either constitutional or statutory provisions; (2) 'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the individual; (3) well established at the time of the discharge; and (4) substantial and fundamental."[11]

By limiting the sources of public policy to constitutional and statutory provisions, the California Supreme Court recognized that the concept of public policy was "notoriously resistant to precise definition."[12] Thus, "courts should venture into this area, if at all, with great care and due deference to the judgment of the legislative branch, 'lest they mistake their own predilections for public policy which deserves recognition at law.' [Citation.]"[13] Moreover, "[a] public policy exception carefully tethered to fundamental policies that are delineated in constitutional or statutory provisions strikes the proper balance among the interests of employers, employees

---

680], overruled in part by *Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 80, footnote 6 [78 Cal.Rptr.2d 16, 960 P.2d 1046].

[7]*Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 178 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314].

[8]*Stevenson v. Superior Court, supra,* 16 Cal.4th at page 887.

[9]*Gantt v. Sentry Insurance, supra,* 1 Cal.4th at page 1094.

[10]*Gantt v. Sentry Insurance, supra,* 1 Cal.4th at page 1090.

[11]*Stevenson v. Superior Court, supra,* 16 Cal.4th at page 894; see also *Kelly v. Methodist Hospital of So. California* (2000) 22 Cal.4th 1108, 1112 [95 Cal.Rptr.2d 514, 997 P.2d 1169]; *Gantt v. Sentry Insurance, supra,* 1 Cal.4th 1083, 1090, citing *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 669-670 [254 Cal.Rptr. 211, 765 P.2d 373].

[12]*Gantt v. Sentry Insurance, supra,* 1 Cal.4th at page 1095; see also *Green v. Ralee Engineering Co., supra,* 19 Cal.4th at page 76.

[13]*Gantt v. Sentry Insurance, supra,* 1 Cal.4th at page 1095.

and the public. The employer is bound, at a minimum, to know the fundamental public policies of the state and nation as expressed in their constitutions and statutes; so limited, the public policy exception presents no impediment to employers that operate within the bounds of law. Employees are protected against employer actions that contravene fundamental state policy. And society's interests are served through a more stable job market, in which its most important policies are safeguarded."[14]

## 5. FEHA

■■■ Plaintiff offers three sources of public policy, the first of which is FEHA. Plaintiff contends that Government Code sections 12920 and 12940 of FEHA serve as a source of fundamental public policy for his claim of wrongful discharge. Plaintiff also contends that, despite the religious-entity exemption in the preamended version of FEHA, the court should have applied the amended version of FEHA retroactively because defendant's liability for such discriminatory conduct was foreseeable.

We conclude that, while FEHA may be a source of fundamental public policy, well-established law, as set forth in the preamended version of FEHA at the time of plaintiff's termination, bars his common law claim under FEHA.

FEHA establishes a civil right to be free from job discrimination based on certain classifications including race and sex.[15] Government Code section 12920 provides: "It is hereby declared as the public policy of this state that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgement on account of race, religious creed, color, national origin, ancestry, physical disability, medical disability, medical condition, marital status, sex, age, or sexual orientation." FEHA's provisions prohibiting discrimination may provide the policy basis for a claim for wrongful discharge in violation of public policy.[16]

However, FEHA does not serve as a policy basis where another statutory provision exempts defendant from liability. In *Jennings v. Marralle*,[17] the plaintiff sued the defendant for wrongful termination in violation of public policy under FEHA against age discrimination. There, the plaintiff alleged that the defendant terminated her to prevent her from receiving her benefits under the defendant's pension plan.

---

[14]*Gantt v. Sentry Insurance, supra,* 1 Cal.4th at page 1095.

[15]Government Code section 12921; *Stevenson v. Superior Court, supra,* 16 Cal.4th at page 891.

[16]*Stevenson v. Superior Court, supra,* 16 Cal.4th at page 909.

[17]*Jennings v. Marralle* (1994) 8 Cal.4th 121 [32 Cal.Rptr.2d 275, 876 P.2d 1074].

In *Jennings*, the California Supreme Court noted that, while FEHA stated a public policy against employment discrimination based on age, FEHA also limited its application to employers of five or more employees.[18] The court advised that, in extracting public policy from legislation, courts must consider the entire statutory scheme in conjunction with any language limiting its application.[19] Government Code section 12926, subdivision (d), defines "employer" as "any person regularly employing five or more persons." The court reasoned: "We agree with plaintiff that the public policy declared by the Legislature in section 12920 applies to all employers. It does not follow, however, that in declaring that policy the Legislature intended to create the basis for a common law tort action and to thereby subject employers whom it expressly exempted from FEHA coverage to liability for age discrimination."[20] The court concluded that FEHA's age discrimination policy did not support the plaintiff's cause of action for wrongful discharge in violation of public policy against a defendant that employed fewer than five employees.[21]

In *Kelly v. Methodist Hospital of So. California*,[22] the California Supreme Court addressed another limitation on qualified employers. As here, in *Kelly*, the defendant was a nonprofit religiously affiliated hospital. The defendant terminated the plaintiff, a 50-year-old nurse, because she refused to return to work after her medical leave expired. In her lawsuit, the plaintiff included a claim for wrongful termination based on age in violation of public policy under FEHA.

Government Code section 12926, former subdivision (d) provided that an "employer" did not include a nonprofit religious entity. Before the amendments, as discussed below, qualified religious entities enjoyed complete exemption from FEHA's requirements.[23] Therefore, the court found the defendant exempt from the plaintiff's claim for wrongful termination in violation of public policy under FEHA.[24]

Likewise, in this case, defendant, as a nonprofit religious corporation, is exempt from plaintiff's common law claim under FEHA. And, plaintiff does not challenge defendant's qualification as a nonprofit religious entity within the meaning of Government Code section 12926, subdivision (d).

---

[18] *Jennings v. Marralle, supra*, 8 Cal.4th at page 130.

[19] See *Jennings v. Marralle, supra*, 8 Cal.4th at page 134; see also *Stevenson v. Superior Court, supra*, 16 Cal.4th at page 904.

[20] *Jennings v. Marralle, supra*, 8 Cal.4th at page 134.

[21] See *Jennings v. Marralle, supra*, 8 Cal.4th at page 136.

[22] *Kelly v. Methodist Hospital of So. California, supra*, 22 Cal.4th 1108.

[23] *Kelly v. Methodist Hospital of So. California, supra*, 22 Cal.4th at pages 1116, 1119.

[24] *Kelly v. Methodist Hospital of So. California, supra*, 22 Cal.4th at page 1126.

Nevertheless, plaintiff, in citing *Dabbs v. Cardiopulmonary Management Services*,[25] argues that the current version of FEHA, which limited the scope of the religious-entity exemption, may serve as the basis of public policy for her wrongful termination claim.

In 1999, the Legislature enacted Government Code section 12922, which provides: "Notwithstanding any other provision of this part, an employer that is a religious corporation may restrict eligibility for employment in any position involving the performance of religious duties to adherents of the religion for which the corporation is organized."[26] The Legislature also enacted Government Code section 12926.2. Former subdivision (c) of that provision read: "Notwithstanding subdivision (d) of Section 12926 and except as otherwise provided in paragraph (1) or (2), 'employer' includes a religious corporation or association with respect to persons employed by the religious association or corporation to perform duties, other than religious duties, at a health care facility operated by the religious association or corporation for the provision of health care that is not restricted to adherents of the religion that established the association or corporation."[27]

As stated earlier, to support a wrongful discharge claim, the public policy must be, among other things, well established at the time of plaintiff's termination.[28] Obviously, legislation enacted after plaintiff's termination neither existed, nor was well established at the pertinent time. Although the preamended version of FEHA was inconsistent with federal civil rights law,[29] we cannot impose civil liability upon an employer under FEHA—a legislative scheme that expressly precluded application of its provision to such employers.[30]

Furthermore, the newly enacted provisions of FEHA are not retroactive. Generally, statutes do not apply retroactively unless the Legislature clearly indicated otherwise.[31] Also, a retroactive statute affects the parties'

---

[25]*Dabbs v. Cardiopulmonary Management Services* (1987) 188 Cal.App.3d 1437 [234 Cal.Rptr. 129].

[26]Statutes 1999, chapter 913, section 1.

[27]Added Statutes 1999, chapter 913, section 2, amended by Statutes 2001, chapter 910, section 1 (nonsubstantive changes to subdivision (c)).

[28]*Stevenson v. Superior Court, supra*, 16 Cal.4th at pages 890, 894.

[29]See *Kelly v. Methodist Hospital of So. California, supra*, 22 Cal.4th at page 1118 (discussing Tit. VII).

[30]See *Jennings v. Marralle, supra*, 8 Cal.4th at page 132.

[31]*Murray v. Oceanside Unified School Dist.* (2000) 79 Cal.App.4th 1338, 1348 [95 Cal.Rptr.2d 28], quoting *Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 244 [62 Cal.Rptr.2d 243, 933 P.2d 507].

rights and obligations that exist before the statute's adoption.[32] ▄▄▄ In regards to the FEHA amendments, plaintiff concedes that the Legislature made no express provision for retroactive application. Under the circumstances in this case, the amendments substantially affect defendant's liability under FEHA. This case does not resemble the situation presented in *Dabbs*, which involved an act, that became operative two months after the plaintiff's termination, but neither changed nor conflicted with existing statutory law and policy that supported the plaintiff's wrongful discharge claim.[33] In this case, the presumption against retroactive application would preclude plaintiff's reliance on the newly enacted provisions of FEHA as the basis of public policy for his wrongful discharge claim.

We conclude that the trial court properly found that FEHA did not support plaintiff's cause of action for wrongful discharge in violation of public policy.

### 6. *Section 8*

Plaintiff also claimed that defendant terminated his employment in violation of public policy as set forth in Section 8. Section 8 provides: "A person may not be disqualified from entering or pursuing a business, profession, vocation, or employment because of sex, race, creed, color, or national or ethnic origin."

▄▄▄ Although defendant acknowledges that Section 8 may provide the public policy for discrimination claims, defendant argues that Section 8 does not support wrongful termination claims based on an employer's retaliatory conduct. Defendant's argument lacks merit.

Courts have found Section 8 as an alternative source of public policy for wrongful termination claims.[34] Section 8 reflects fundamental and firmly established public policy against employment discrimination based on certain classifications including race and sex.[35]

---

[32] *Borden v. Division of Medical Quality* (1994) 30 Cal.App.4th 874, 880 [35 Cal.Rptr.2d 905].

[33] *Dabbs v. Cardiopulmonary Management Services, supra*, 188 Cal.App.3d at pages 1443-1444.

[34] See, e.g., *Rojo v. Kliger* (1990) 52 Cal.3d 65, 88-91 [276 Cal.Rptr. 130, 801 P.2d 373]; *Sistare-Meyer v. Young Men's Christian Assn.* (1997) 58 Cal.App.4th 10, 14-15 [67 Cal.Rptr.2d 840]; *Badih v. Myers* (1995) 36 Cal.App.4th 1289, 1296 [43 Cal.Rptr.2d 229]; *Blom v. N.G.K. Spark Plugs (U.S.A.), Inc.* (1992) 3 Cal.App.4th 382, 387 [4 Cal.Rptr.2d 139].

[35] See *Rojo v. Kliger, supra*, 52 Cal.3d at page 90 (sex); *Sistare-Meyer v. Young Men's Christian Assn., supra*, 58 Cal.App.4th at pages 14-15 (race); *Carmichael v. Alfano Temporary Personnel* (1991) 233 Cal.App.3d 1126, 1132 [285 Cal.Rptr. 143] (race and sex).

In *Badih v. Myers*,[36] the defendant claimed that, as an employer with fewer than five employees, he was not subject to liability under FEHA for the plaintiff's wrongful termination claim based on pregnancy discrimination. The plaintiff, however, argued that her wrongful termination claim was not only based on FEHA, but also the public policy set forth in Section 8. The court therefore determined whether pregnancy discrimination constituted a form of sex discrimination under Section 8. Although pregnancy discrimination was not a specifically enumerated category of prohibited discrimination under Section 8, the court, after reviewing certain statutes and court decisions, agreed that pregnancy discrimination should be treated as a form of sex discrimination. In citing the California Supreme Court's decision in *Rojo v. Kliger*,[37] the court held that because Section 8 expresses fundamental public policy against sex discrimination, it provided the public policy basis for maintaining a cause of action for wrongful discharge based on pregnancy discrimination.

. As stated above, although defendant may agree that Section 8 provides an alternative source of public policy against discrimination, defendant challenges plaintiff's characterization of his claim as one based on discrimination, as opposed to retaliation. Defendant argues that, while Section 8 states a public policy against discrimination based on race and sex, it provides no policy in regards to employer retaliation. Defendant notes that Section 8 neither explicitly mentions the term "retaliation," nor implicitly prohibits an employer from retaliating against an employee "for filing a charge with a government agency."

Quoting from *Sequoia Ins. Co. v. Superior Court*,[38] defendant states that "[A] constitutional or statutory provision must sufficiently describe the type of prohibited conduct to enable an employer to know the fundamental public policies that are expressed in that law."[39] As noted by plaintiff, however, the quoted language is prefaced by the clause: "Although one should not assume that the employer's *precise act* (e.g., discharging an employee for refusing to commit a crime) must be specifically prohibited for the public policy exception to apply . . . ."[40] In *Sequoia*, the plaintiff failed to point to a specific provision of any law in support of his wrongful termination claim.

Here, plaintiff referred to Section 8's prohibition against employment discrimination based on race and sex. In his complaint, plaintiff alleged that

[36]*Badih v. Myers, supra*, 36 Cal.App.4th 1289.
[37]*Rojo v. Kliger, supra*, 52 Cal.3d at pages 90-91.
[38]*Sequoia Ins. Co. v. Superior Court* (1993) 13 Cal.App.4th 1472 [16 Cal.Rptr.2d 888].
[39]*Sequoia Ins. Co. v. Superior Court, supra*, 13 Cal.App.4th at page 1480.
[40]*Sequoia Ins. Co. v. Superior Court, supra*, 13 Cal.App.4th at page 1480.

defendant terminated his employment in retaliation for filing a claim of race and sex discrimination with the EEOC. As in *Badih v. Myers*,[41] while this form of discrimination is not enumerated specifically in Section 8, employment discrimination often manifests itself in retaliatory conduct.

■ Indeed, one category of wrongful discharge claims occurs where an employer terminates an employee for "reporting an alleged violation of a statute of public importance."[42] One court explained: "[A] violation of the statute is *also* a violation of public policy, and if an employer fires an employee who complains to the authorities about such violation, then the termination is a termination in violation of public policy. And such termination, being in contravention of a fundamental public policy, is hence actionable as the tort of wrongful termination in violation of public policy."[43] Courts have allowed wrongful termination claims in the following circumstances: where an employer discharged an employee for complaining about the employer's use of defective parts;[44] where an employer terminated an employee in retaliation for supporting a coworker's sexual harassment claim;[45] where an employer fired employees in retaliation for reporting immigration violations;[46] where an employer fired an employee in retaliation for attempting to implement antidiscrimination policies,[47] and, as here, where an employer terminated an employee for filing complaints of race and sex discrimination with the EEOC.[48]

In *Rojo v. Kliger*,[49] the California Supreme Court noted that the plaintiffs alleged that they were terminated for refusing to submit to their employer's sexual advances and that they were terminated in retaliation for exercising their fundamental right to be free from sexual harassment.[50] The court indicated that under either theory, the plaintiffs' causes of action for wrongful discharge in violation of public policy were sufficient to survive demurrer.[51]

■ For these reasons, we reject defendant's attempt to draw a distinction between retaliation and discrimination. ". . . *Tameny* and its progeny

[41]*Badih v. Myers, supra,* 36 Cal.App.4th 1289.

[42]*Gantt v. Sentry Insurance, supra,* 1 Cal.4th at page 1091; *Hobson v. Raychem Corp.* (1999) 73 Cal.App.4th 614, 632 [86 Cal.Rptr.2d 497].

[43]*Jie v. Liang Tai Knitwear Co.* (2001) 89 Cal.App.4th 654, 661-662 [107 Cal.Rptr.2d 682]; see also *Blom v. N.G.K. Spark Plugs (U.S.A.), Inc., supra,* 3 Cal.App.4th at page 389.

[44]*Green v. Ralee Engineering Co, supra,* 19 Cal.4th at page 73.

[45]*Gantt v. Sentry Insurance, supra,* 1 Cal.4th at page 1085.

[46]*Jie v. Liang Tai Knitwear Co., supra,* 89 Cal.App.4th at page 657.

[47]*Blom v. N.G.K. Spark Plugs (U.S.A.), Inc., supra,* 3 Cal.App.4th at page 385.

[48]*Carmichael v. Alfano Temporary Personnel, supra,* 233 Cal.App.3d at page 1128.

[49]*Rojo v. Kliger, supra,* 52 Cal.3d 65.

[50]*Rojo v. Kliger, supra,* 52 Cal.3d at page 91.

[51]*Rojo v. Kliger, supra,* 52 Cal.3d at page 91.

confirm, implicitly and explicitly, that discharge of an employee in retaliation for resisting employer violations of laws that secure important public policies contravenes those policies, and gives rise to a common law action in tort."[52] We hold that the trial court erred in sustaining defendant's demurrer as to plaintiff's wrongful termination claim based on defendant's retaliation in violation of Section 8's policy against race and sex discrimination.

### 7. *Title VII*

In addition to FEHA and Section 8, plaintiff also offered Title VII as an alternative source of public policy against employment discrimination.

Defendant argues that, because it directly conflicted with the California Legislature's intent at the time of plaintiff's termination, Title VII could not serve as the policy basis for defendant's wrongful discharge claim. Although defendant acknowledges that courts have relied on federal law to support such claims, defendant contends that no court has relied on federal authority that directly conflicted with California law.

We begin our analysis with the relevant provisions of Title VII. Title 42 United States Code section 2000e-2 states: "It shall be an unlawful employment practice for an employer . . . [¶] . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ."

Title 42 United States Code section 2000e-3(a) provides: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

Lastly, 42 United States Code section 2000e-1(a) states: "This subchapter shall not apply to an employer with respect to the employment of aliens outside any State, or to a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities."

These provisions indicate that, while federal law is consistent with state law in prohibiting retaliatory discharge for filing a charge of race and sex

---

[52]*Blom v. N.G.K. Spark Plugs (U.S.A.), Inc., supra*, 3 Cal.App.4th at page 389.

discrimination, federal law contradicts state law, as it existed at the time of plaintiff's termination, in applying this policy to religious entities.[53]

As discussed above, to support a wrongful termination claim, the policy must be "(1) delineated in either constitutional or statutory provisions; (2) 'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the individual; (3) well established at the time of the discharge; and (4) substantial and fundamental."[54] Without question, federal law condemning employment discrimination based on race and sex satisfies the last three requirements.

█ The question, however, is whether Title VII is an appropriate source of public policy. "The employer is bound, at a minimum, to know the fundamental public policies of the *state and nation* as expressed in their constitutions and statutes; so limited, the public policy exception presents no impediment to employers that operate within the bounds of law."[55] Under circumstances as the one presented here, where the public policies of the state and the nation are in direct conflict, the precise issue is whether federal law that is inconsistent with state law can serve as the source of public policy for a state common law cause of action for wrongful termination.

█ Before evaluating this issue, we first note that in the absence of a conflict between state and federal policies, federal statutory and constitutional law may provide the policy basis for a wrongful termination claim.[56] While the claim is a state law cause of action,[57] there is no requirement that the public policy basis for the cause of action be derived solely from state law.[58] Rather, federal law, and in particular, Title VII, may supply an alternative public policy basis for a wrongful termination claim.[59]

In *Green v. Ralee Engineering Co.*,[60] the California Supreme Court held that statutorily authorized federal administrative regulations on airline safety provided the necessary public policy basis for plaintiff's wrongful termination claim.[61] The court noted that its conclusion was consistent with the

---

[53]See *Kelly v. Methodist Hospital of So. California, supra*, 22 Cal.4th at pages 1118-1119.

[54]See *Stevenson v. Superior Court, supra*, 16 Cal.4th at page 894.

[55]*Gantt v. Sentry Insurance, supra*, 1 Cal.4th at page 1095, italics added; see *Stevenson v. Superior Court, supra*, 16 Cal.4th at page 889.

[56]See, e.g., *Green v. Ralee Engineering Co., supra*, 19 Cal.4th at page 90.

[57]See *Rains v. Criterion Systems, Inc.* (9th Cir. 1996) 80 F.3d 339, 343-344.

[58]See *Jie v. Liang Tai Knitwear Co., supra*, 89 Cal.App.4th at page 665.

[59]See *Rains v. Criterion Systems, Inc., supra*, 80 F.3d at page 344; *Elliott v. LTD Direct Marketing, Inc.* (D.Ariz. 1997) 1 F.Supp.2d 1031, 1033, footnote 1.

[60]*Green v. Ralee Engineering Co., supra*, 19 Cal.4th 66.

[61]*Green v. Ralee Engineering Co., supra*, 19 Cal.4th at page 90.

rule that public policy be tethered to specific statutory or constitutional provisions.[62]

In response to the defendant's argument that the common law claim should not be based on federal authority that neither prohibits the act of retaliatory termination, nor provides for civil damages, the court found that the defendant's argument lacked merit because employers are "responsible for knowing 'the fundamental public policies of the state *and nation.*' [Citation.]"[63] The court also noted that, in *Tameny*, the first case in which the court recognized the common law cause of action for wrongful termination, the claim was based in part on federal antitrust laws.[64] Thus, so long as the other requirements are satisfied, the public policy for a wrongful termination claim may be delineated in federal statutory, constitutional, and even regulatory provisions.[65]

 In this case, although a conflict exists between state and federal law, we have found no authority restricting the use of federal law as public policy for a wrongful discharge claim in the face of conflicting state law. Nevertheless, defendant, during oral argument, contended that, in allowing plaintiff to assert a claim for wrongful discharge in violation of federal public policy that is contrary to clear state legislative intent, we are in effect infringing upon the Legislature's authority to define California's public policy. We disagree. California has not limited the definition of public policy solely to remedies provided by state statutory or regulatory provisions. In enacting FEHA, the state Legislature intended to supplement existing state and federal remedies for employment discrimination.[66]

In fact, nothing in FEHA or Title VII prevents a plaintiff from raising alternative theories for his wrongful termination claim. As stated above, "[t]he absence of an [*sic*] FEHA remedy would not negate the existence of a common law tort remedy if another law created the right on which this action is predicated."[67] Even if a plaintiff relies on a policy that conflicts with FEHA, such conflict does not preclude plaintiff from submitting an alternative policy ground.[68] Unlike other states that either do not provide a common law public policy exception to the at-will employment

---

[62]*Green v. Ralee Engineering Co., supra,* 19 Cal.4th at pages 74, 90.
[63]*Green v. Ralee Engineering Co., supra,* 19 Cal.4th at page 87.
[64]*Green v. Ralee Engineering Co., supra,* 19 Cal.4th at page 88.
[65]*Green v. Ralee Engineering Co., supra,* 19 Cal.4th at page 90.
[66]*Stevenson v. Superior Court, supra,* 16 Cal.3d at pages 891-892.
[67]*Jennings v. Marralle, supra,* 8 Cal.4th at page 130.
[68]See, e.g., *Badih v. Myers, supra,* 36 Cal.App.4th at page 1296.

doctrine,[69] or do not allow a common law claim to be based on statutory sources that provide their own remedies,[70] California law allows a plaintiff to rely on alternative antidiscrimination remedies in order to afford the plaintiff the maximum opportunity to vindicate his civil rights.[71]

In particular, under California law, despite FEHA's limitation on religious-entity liability, FEHA was not intended to provide an exclusive remedy for civil rights violations.[72] "An examination of [FEHA] supports the view it lacks the comprehensiveness necessary to infer a legislative intent to displace all preexisting or alternative remedies for employment discrimination. For example, with the exception of cases involving harassment, the FEHA applies only to 'employers' of five or more persons . . . , it excludes religious associations or nonprofit corporations . . . , and it does not protect against discrimination on grounds of sexual orientation."[73] Plaintiffs are not bound by FEHA's limitations, but rather, are free to seek alternative sources of law to support their wrongful discharge claim.[74] Therefore, limitations, including those that define which employers are subject to liability for employment discrimination under FEHA, do not apply to common law causes of action for wrongful discharge in violation of public policy based on policy found elsewhere.[75]

As with the California Legislature, Congress has promoted liberal construction of its employment discrimination laws to afford the greatest protection to the victims of discrimination.[76] The remedies afforded under Title VII do not preempt a state law claim for wrongful termination in

---

[69]See, e.g., *Leathem v. Research Found. of City Univ.* (S.D.N.Y. 1987) 658 F.Supp. 651, 654; *Borden v. Johnson* (1990) 196 Ga.App. 288, 289 [395 S.E.2d 628, 628-629].

[70]See, e.g., *Diberardinis-Mason v. Super Fresh* (E.D.Pa. 2000) 94 F.Supp.2d 626, 632, citing *Jacques v. Akzo Int'l Salt, Inc.* (1993) 422 Pa.Super. 419, 428-429 [619 A.2d 748, 752-753]; *Cormier v. Littlefield* (D.Mass. 1998) 13 F.Supp.2d 127, 129; *Hughes v. Bedsole* (4th Cir. 1995) 48 F.3d 1376, 1383, footnote 6.

[71]*Rojo v. Kliger, supra,* 52 Cal.3d at pages 74-75.

[72]Government Code section 12993, subdivision (a); *Stevenson v. Superior Court, supra,* 16 Cal.4th at page 899; *Nelson v. United Technologies* (1999) 74 Cal.App.4th 597, 611-612 [88 Cal.Rptr.2d 239].

[73]*Rojo v. Kliger, supra,* 52 Cal.3d at page 80, citations omitted; see also *Stevenson v. Superior Court, supra,* 16 Cal.4th at page 898, footnote 7.

[74]*Rojo v. Kliger, supra,* 52 Cal.3d at page 82, see *Carmichael v. Alfano Temporary Personnel, supra,* 233 Cal.App.3d at page 1132 (common law claim was not barred by FEHA's statute of limitations); *Badih v. Myers, supra,* 36 Cal.App.4th 1289, 1293, 1296 (common law claim was not barred by FEHA's requirement that qualifying employer regularly employ five or more persons).

[75]See *Badih v. Myers, supra,* 36 Cal.App.4th at page 1293.

[76]See *Laird v. Capital Cities/ABC, Inc.* (1998) 68 Cal.App.4th 727, 738 [80 Cal.Rptr.2d 454]; *Robinson v. Adams* (9th Cir. 1987) 847 F.2d 1315, 1319.

violation of public policy.[77] The Congress specifically provided: "Nothing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State . . . ."[78] The employment discrimination laws of California and the nation, therefore, provide alternative remedies to achieve the goal of combating inequality in the workplace.[79]

In allowing plaintiff to rely on public policy based on the law of the nation, as opposed to the state, another important consideration is whether the employer had adequate notice of such theory of liability. ■ The requirement that the public policy be delineated in a statutory or constitutional provision balances the competing interests of "(1) providing the employer with proper warning it is violating fundamental public policies, (2) ensuring employees are protected against employer actions that contravene fundamental policy, and (3) guaranteeing to the public that employers' interests will not be protected at the expense of society's most important policies. [Citations.]"[80]

■ The federal antidiscrimination statutes provide employers with adequate notice. Title VII prohibits employment discrimination based on race and sex. Under 42 United States Code section 2000e-1(a), while religious-entity employers may base their employment decisions on religious preferences, they are not exempt from liability for discrimination based on other impermissible grounds including race and sex.[81] Because California religious-entity employers must comply with federal antidiscrimination laws, they have adequate notice that employment discrimination based on race and sex may subject them to possible liability under those laws.

Moreover, in this case, plaintiff's first charge with DFEH noted that he had filed a claim with both DFEH and the EEOC. Plaintiff's charge also listed his EEOC claim number. Plaintiff's second charge with DFEH provided the same information. Therefore, in this particular case, defendant had adequate notice of plaintiff's possible reliance on the provisions of both state and federal law.

For the foregoing reasons, we conclude that, although the public policies under FEHA and Title VII are in direct conflict in regards to the scope of the

[77]*California Federal S. & L. Assn. v. Guerra* (1987) 479 U.S. 272, 282-283 [107 S.Ct. 683, 690-691, 93 L.Ed.2d 613]; *Rains v. Criterion Systems, Inc., supra,* 80 F.3d at page 345.
[78]Title 42 United States Code section 2000e-7.
[79]*California Federal S. & L. Assn. v. Guerra, supra,* 479 U.S. at pages 282-283 [107 S.Ct. at pages 690-691]; *Johnson v. Railway Express Agency* (1975) 421 U.S. 454, 459 [95 S.Ct. 1716, 1719-1720, 44 L.Ed.2d 295].
[80]*Green v. Ralee Engineering Co., supra,* 19 Cal.4th at page 84; see also *Stevenson v. Superior Court, supra,* 16 Cal.4th at page 889.
[81]See *E.E.O.C. v. Fremont Christian School* (9th Cir. 1986) 781 F.2d 1362, 1366.

religious-entity exemption, a plaintiff may rely on Title VII as a source of public policy for his state common law cause of action for wrongful termination. This conclusion, albeit problematic by allowing a plaintiff to extract public policy from various statutes without complying with certain statutory requirements,[82] is nonetheless consistent with the purpose of both state and federal antidiscrimination laws. In enacting California's antidiscrimination laws, "the Legislature has manifested an intent to amplify, not abrogate, an employee's common law remedies for injuries relating to employment discrimination."[83] The same can be said of Congress's intent in enacting Title VII.[84] Policies against race and sex discrimination are among the state and nation's most fundamental and substantial public policies,[85] and therefore, multiple remedies, while at times overlapping or even conflicting, serve the purpose of maximizing plaintiff's opportunity to seek relief from discrimination based on such impermissible classifications.[86]

Accordingly, the trial court erred in sustaining defendant's demurrer on the ground that plaintiff could not apply Title VII as a public policy source for his wrongful termination claim.

### 8. *Disposition*

We reverse the trial court's judgment of dismissal. Plaintiff shall recover his costs on appeal.

Hollenhorst, Acting P. J., and Richli, J., concurred.

---

[82]See *Stevenson v. Superior Court, supra,* 16 Cal.4th at page 905 (exhaustion of administrative remedies does not apply); *Jie v. Liang Tai Knitwear Co., supra,* 89 Cal.App.4th at page 665 (statutory limitation on damages does not apply); see generally *Stevenson v. Superior Court, supra,* 16 Cal.4th at pages 911-925 (dis. opn. of Brown, J.).

[83]*Rojo v. Kliger, supra,* 52 Cal.3d at page 75.

[84]*Johnson v. Railway Express Agency, supra,* 421 U.S. at page 459 [95 S.Ct. at pages 1719-1720].

[85]See *Gantt v. Sentry Insurance, supra,* 1 Cal.4th at page 1101.

[86]*Rojo v. Kliger, supra,* 52 Cal.3d at pages 74-75.