Filed 4/21/22  Berkery v. Visit Elk Grove CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| KRISTIN BERKERY, | C092053 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2019-00255764-CU-OE-GDS) |
| v. | |
| VISIT ELK GROVE et al., | |
| Defendants and Respondents. | |

In August 2018, plaintiff Kristin Berkery began providing services as an independent contractor to defendant Visit Elk Grove (VEG), pursuant to a written contract signed by Berkery and defendant John Joseph Thompson (VEG's executive director at the time).  Over the next few months, Berkery rejected Thompson's romantic advances.  Berkery later sued defendants, raising claims of sexual harassment (Civ. Code, § 51.9) and failure to prevent sexual harassment (Gov. Code, § 12940), among other claims.

1

Civil Code section 51.9 addresses sexual harassment in relationships often arising outside of workplace environments. The statute provides a nonexclusive list of providers of professional services in connection with which sexual harassment may exist, including physicians, attorneys, and teachers. The statute also contemplates liability for sexual harassment in a "relationship that is substantially similar to" those listed.

Ultimately, the trial court here granted defendants' demurrers to Berkery's third amended complaint (TAC), and denied leave to amend, concluding that because Berkery "was providing services to VEG, rather than the other way around," her sexual harassment claim under Civil Code section 51.9 was not viable. The trial court further concluded that because the underlying sexual harassment claim was not viable, neither was the claim for failure to *prevent* sexual harassment.

On appeal, Berkery argues the trial court erred.

We affirm on an alternate ground: Berkery did not plead an "inability . . . to easily terminate the relationship" with defendants, a necessary element of Berkery's claim under the version of Civil Code section 51.9 that applies to this case. In affirming on this alternate ground, we conclude recent legislation eliminating that element is inapplicable here, because it is not retroactive.

BACKGROUND

Berkery owned and operated a marketing consulting firm based in Sacramento, providing clients with "services such as strategic planning, Web design, media buying, media relations, voiceover, and event planning." In August 2018, Berkery (who had been doing business in the City of Elk Grove since 2013) signed a contract to provide her services to defendant VEG, a nonprofit entity formed by the City of Elk Grove to promote tourism within the city.

The contract provided that Berkery was an "independent contractor" who had "the sole right to control the means, manner and method by which the services" would "be performed" under the agreement. The contract further provided: either party could

2

terminate the agreement "at any time by giving 21 days' written notice to the other party"; the written contract was "the entire [a]greement" between the parties; and the agreement could be "modified only by a writing signed by both parties."

Defendant Thompson, VEG's executive director at the time, signed the contract on VEG's behalf.[1] Thompson communicated frequently with Berkery in the first month of the contract, including three e-mails "promis[ing] many more assignments" to Berkery.

On August 26, 2018, Thompson sent a text message to Berkery, asking permission to pose a "personal question": "Have you wondered why our paths have crossed? I have, a lot lately!" Thompson observed there were "many coincidences that . . . pulled" him and Berkery "together,"[2] and he "wanted to be honest with [Berkery] as a friend." Berkery was "stunned and frightened" by the text message, which she did not reply to, and was followed by another text from Thompson later that day: "Hi, I'm so sorry and very embarrassed. This was sent at a very weak moment . . . . Please accept my apology!"

The next morning, Berkery replied to Thompson: "It's all good. . . . I was really busy . . . yesterday . . . . I'm really not looking for anything right now because of all the dating challenges I've been through. Let's get to know each other and then we can see."

Subsequently, Berkery and Thompson attended "many functions" together in their professional capacities, "[s]ometimes . . . carpool[ing]" to and from the events.

On September 14, 2018, Thompson asked Berkery to go on a date with him. Berkery declined, saying. " 'I don't date people I work with regularly.' "

---

[1] The contract names "Explore Elk Grove" as party to the contract with Berkery. Explore Elk Grove was the "public brand name for" VEG.

[2] One day in August 2018, Thompson and Berkery unexpectedly came across each other in the parking lot of a school that their children attended.

3

On October 20, 2018, Thompson drove Berkery home after they attended a costume ball. While they were in the car, Thompson told Berkery that he was in love with her, and wondered how he could get Berkery to look at him the way she looked at a man that she danced with during the ball that night. Thompson asked Berkery "to explain her rejection of his advances." Berkery "felt trapped and frightened," and explained that she wanted "to be able to do [her] job" for VEG, and did not "want to date anyone" at the moment.

Several hours later, Thompson sent a text to Berkery: "Thank you for tonight! It was great being there with the hottest girl in the room! [¶] . . . [¶] I'm hurting because you are, because you're in my heart, and that will never go away!!!! That's my problem, not yours, and I'll deal with it . . . but PLEASE remember, my love for you only grows stronger everytime [*sic*] we're together. [¶] I'm only 10 minutes away and would love nothing more than to be there for you. Even just to hold you! XO [¶] Oh, and none of this means we can't work together for a very long time and be very successful. We think alike and could do great things together."

Berkery "fear[ed] for her physical safety and that of her children. . . . Between the stress of her job and the strain of rejecting Thompson's creepy advances, she was suffering from anxiety, insomnia, headaches and constant fatigue." But she was also "afraid she might lose this important client because she didn't want a sexual relationship with Thompson."

In an October 24, 2018 phone conversation, Berkery told Thompson she did not want to date him, and " 'fe[lt] that [Thompson] repeatedly asking' " to date her was " 'putting th[e] project . . . at risk.' She said she would resign unless Thompson ceased his sexual pursuit of her."

In two November 2018 text messages (sent 11 days apart), Thompson asked Berkery to go on a date with him. Berkery declined.

4

A few days after she declined Thompson for the second time in November 2018, and "[b]ecause Thompson had assured her there was plenty of work for her business"—including "Elk Grove Restaurant Week," in the second half of January 2019 (Restaurant Week)—Berkery hired several subcontractors for VEG projects.

Thompson's "disorganiz[ation]" in the "chao[tic]" period leading up to Restaurant Week made Berkery "worr[y] about the viability" of the event.

On January 3, 2019, Berkery: (a) sent an e-mail to Thompson "describing her frustration" surrounding Restaurant Week; (b) sent an e-mail to Restaurant Week's digital advertising vendor inquiring whether the vendor or VEG "was to blame" for delayed paperwork; and (c) met with VEG's chairperson, to whom she explained the " 'complete breakdown in communication' " with Thompson, who had engaged in "recurring sexual harassment and unwelcome advances."

VEG's chairperson "expressed regret that [Berkery] was sexually harassed and told [Berkery] that the [b]oard was happy with her work."

In an e-mail the next day, Thompson said Berkery was " 'out of line' " in her communication to the digital advertising vendor. " 'If you don't have the trust in your own client, we really shouldn't be working together.' " " 'I feel it's time to move on.' " He asked Berkery to "stay on" for "about three more weeks."

Berkery declined, writing in an e-mail: " '[C]onsider this my 7 day notice. I'll be leaving . . . 1/11/19.' " Berkery expressed to Thompson her belief that he was " 'intentionally trying to bring [her] down . . . because [she] wouldn't date [him].' " In a reply e-mail, Thompson disagreed.

A week later, on January 11, 2019, VEG's chairperson told Berkery that "an investigation had been launched." Berkery "agreed to cooperate," and met with the investigator (an attorney from a local law firm) for about one hour on January 14, 2019. Berkery provided to the investigator numerous text messages and e-mails between her and Thompson.

On February 7, 2019, VEG's chairperson told Berkery that " 'the investigation . . . concluded' " and that "Thompson's sexual harassment" of Berkery " 'had been addressed.' " Berkery was told that "[b]ecause the investigation involved a 'personnel matter,' " no further information could be "divulge[d]."

Over the course of the contract, Berkery billed VEG an average of $3,200 a month for her services, "at a billing rate of $90 an hour for technology work and $45 an hour for writing."

In May 2019, Berkery filed a complaint against VEG, VEG's chairperson, and Thompson.

In August 2019, Thompson's employment with VEG ended.

In December 2019, Berkery filed the TAC, stating four causes of action against defendants: (1) "Sexual Harassment in a Defined Relationship" (Civ. Code, § 51.9); (2) "Failure to Prevent Sexual Harassment of a Person Providing Services Under Contract" (Gov. Code, § 12940, subd. (j)); (3) "Breach of Implied Covenant of Good Faith and Fair Dealing"; and, (4) "Intentional Infliction of Emotional Distress."

In January 2020, Berkery requested, and the trial court granted, dismissal of VEG's chairperson as a defendant.

Also in January 2020, VEG and Thompson demurred to the TAC. In support of their demurrers, both defendants argued that Berkery failed to state a claim of sexual harassment under Civil Code section 51.9, because she did not present facts showing an inability to easily terminate the relationship, a necessary element under the statute. In her oppositions to the demurrers, Berkery contended that element was eliminated, effective January 1, 2019, in "the new version of Civil Code § 51.9."

In February 2020, the trial court issued tentative rulings sustaining defendants' demurrers without leave to amend as to all causes of action but did not address defendants' arguments regarding the element of an inability to easily terminate the relationship.

6

*Tentative ruling on VEG's demurrer*

The trial court sustained VEG's demurrer to Berkery's sexual harassment claim, because "according to the California Supreme Court, the Legislature enacted Civil Code §51.9 to 'address "relationships between *providers of professional services and their clients*." [Citation.]' (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1044 (emphasis added)." But "the facts alleged in the TAC . . . ma[d]e plain that it was [Berkery] who was providing services to VEG, rather than the other way around, and thus, [Civil Code] § 51.9 ha[d] no application to the facts of the case at bar."

The Government Code section 12940 claim for failure to prevent sexual harassment "necessarily fail[ed] because" the sexual harassment claim failed. Likewise, the claim for intentional infliction of emotional distress was not viable "inasmuch as it [was] expressly premised on defendant Thompson's alleged sexual harassment," which did "not . . . plead a valid claim."

Last, Berkery's claim for breach of the implied covenant of good faith and fair dealing was "deficient as a matter of law," because "there [was] no indication that [Berkery] was unfairly deprived of any benefits to which she was otherwise entitled under the contract with VEG."

The trial court denied leave to amend, "[s]ince [Berkery] . . . had four opportunities to plead her claims . . . against . . . VEG and since the [trial court was] not persuaded [Berkery] ha[d] a reasonable possibility of" pleading viable claims.

*Tentative ruling on Thompson's demurrer*

As a preliminary matter, the trial court explained that only the sexual harassment and intentional infliction of emotional distress claims were "directed against . . . Thompson."

The trial court sustained Thompson's demurrer on those claims for the same reasons it sustained VEG's demurrer. Likewise, the trial court denied leave to amend the

claims against Thompson for the same reasons it denied leave to amend the claims against VEG.

*Hearing*

At a hearing held after the trial court issued its tentative rulings, and after defense counsel observed the defense was "never notified by" Berkery's counsel of a "request for hearing . . . as to any cause of action other than" the failure to prevent sexual harassment, counsel for Berkery agreed to "limit [his] comments" at the hearing to the Government Code section 12940 claim. Counsel for Berkery maintained that he could "cure th[e] lack of underlying sexual harassment" in order to plead a viable claim of failure to prevent sexual harassment, and asked the trial court for leave to amend.

*Judgments*

The trial court affirmed its tentative rulings, and entered judgments for VEG and Thompson in March 2019.

Berkery timely appealed.

DISCUSSION

A. *Standard of Review*

"The function of a demurrer is to test the sufficiency of the complaint by raising questions of law. We give the complaint a reasonable interpretation and read it as a whole with all parts considered in their context. . . . We are not concerned with the plaintiff's ability to prove the allegations or with any possible difficulties in making such proof. We are not bound by the construction placed by the trial court on the pleadings; instead, we make our own independent judgment." (*Scholes v. Lambirth Trucking Co.* (2017) 10 Cal.App.5th 590, 595 (*Scholes*).)

On appeal from a demurrer for failure to state a cause of action, "we accept as true the *well-pleaded* allegations in plaintiffs' [operative] complaint. ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or

8

conclusions of fact or law." ' " (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6, italics added; see *Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 281 ["The 'well-pleaded allegations' of a complaint refer to ' " 'all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law' " ' "].)

"Facts appearing in exhibits attached to the [operative] complaint . . . are accepted as true and are given precedence, to the extent they contradict the allegations." (*Paul v. Patton* (2015) 235 Cal.App.4th 1088, 1091.)

"Where the trial court sustains the demurrer without leave to amend, we must decide whether there is a reasonable possibility the plaintiff can cure the defect with an amendment. If we find that an amendment could cure the defect, we must find the court abused its discretion and reverse. If not, the court has not abused its discretion. The plaintiff bears the burden of proving an amendment would cure the defect." (*Scholes, supra*, 10 Cal.App.5th at p. 595.)

The plaintiff also bears the burden on appeal to show the demurrer was sustained erroneously. (*Savage v. Trammell Crow Co.* (1990) 223 Cal.App.3d 1562, 1576; *Bush v. California Conservation Corps* (1982) 136 Cal.App.3d 194, 200.)

"We may affirm on any basis stated in the demurrer, regardless of the ground on which the trial court based its ruling." (*Krolikowski v. San Diego City Employees' Retirement System* (2018) 24 Cal.App.5th 537, 549.)

B. *Legal Principles*

1. *Sexual harassment in the workplace*

Under the California Fair Employment and Housing Act (the FEHA) (Gov. Code, § 12900 et seq.), it is unlawful "[f]or an employer . . . or any other person, because of . . . sex . . . to harass an employee . . . *or a person providing services pursuant to a contract*. Harassment of . . . a person providing services pursuant to a contract by an employee, other than an agent or supervisor, shall be unlawful if the entity, or its agents or

supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action."  (Gov. Code, § 12940, subd. (j)(1), italics added.)

In *Hughes v. Pair, supra*, 46 Cal.4th 1035 (*Hughes*), our Supreme Court explained that prohibited workplace sexual harassment "ranges from expressly or impliedly conditioning employment benefits on submission to, or tolerance of, unwelcome sexual advances to the creation of a work environment that is 'hostile or abusive to employees because of their sex.'  [Citation.]  Thus, . . . California's FEHA 'recognize[s] two theories of liability for sexual harassment claims . . . ". . . quid pro quo harassment, where a term of employment is conditioned upon submission to unwelcome sexual advances . . . [and] hostile work environment, where the harassment is sufficiently pervasive so as to alter the conditions of employment and create an abusive work environment." ' "  (*Id.* at pp. 1042-1043.)

"[T]he hostile work environment form of sexual harassment is actionable only when the harassing behavior is pervasive or severe.  [Citation.]  . . . [Citation.]  To prevail on a hostile work environment claim under California's FEHA, an employee must show that the harassing conduct was 'severe enough or sufficiently pervasive to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees because of their sex.'  [Citations.]  There is no recovery 'for harassment that is occasional, isolated, sporadic, or trivial.'  [Citation.]  [¶]  Courts that have construed . . . California employment discrimination laws have held that an employee seeking to prove sexual harassment based on no more than a few isolated incidents of harassing conduct must show that the conduct was 'severe in the extreme.' " (*Hughes, supra*, 46 Cal.4th at p. 1043.)

2. *Sexual harassment in certain relationships*

"In 1994, the Legislature enacted Civil Code section 51.9 to address 'relationships between providers of professional services and their clients.'  (Stats. 1994, ch. 710, § 1,

p. 3432.)  The statute sets out a nonexclusive list of such providers, which includes physicians, psychiatrists, dentists, attorneys, real estate agents, accountants, bankers, building contractors, executors, trustees, landlords, and teachers; also falling within the statute's reach is sexual harassment in any 'relationship that is substantially similar to' those specifically listed."  (*Hughes, supra*, 46 Cal.4th at p. 1044, fn. & italics omitted.)

In 2018, the necessary elements to prove sexual harassment under Civil Code section 51.9 were:  (1) a cognizable relationship; (2) that "[t]he defendant has made sexual advances, solicitations, sexual requests, demands for sexual compliance by the plaintiff, or engaged in other verbal, visual, or physical conduct of a sexual nature or of a hostile nature based on gender, that were unwelcome and pervasive or severe"; (3) "an inability by the plaintiff to easily terminate the relationship"; and (4) that such conduct caused or will cause "economic loss or disadvantage or personal injury."  (Former Civ. Code, § 51.9, subd. (a)(1)-(4).)

Senate Bill No. 224 (2017-2018 Reg. Sess.) amended Civil Code section 51.9, effective January 1, 2019.  (Stats. 2018, ch. 951, § 1.)  Relevant here, Senate Bill No. 224 (i) added to the nonexclusive list of relationships that fall within Civil Code section 51.9's reach, by including elected officials, lobbyists, and directors or producers, and (ii) eliminated the third element—the plaintiff's "inability . . . to easily terminate the relationship."  (Stats. 2018, ch. 951, Leg. Counsel's Digest, para. 2.)

Regarding the second element of a Civil Code section 51.9 claim, "the words 'pervasive or severe' in section 51.9 [are to] be given the same meaning that those words have in the employment context."  (*Hughes, supra*, 46 Cal.4th at p. 1046.)  This is so, because the "history of the amendments to Civil Code section 51.9 leaves no doubt of the Legislature's intent to conform the requirements governing liability for sexual harassment in professional relationships outside the workplace to those of . . . California's FEHA . . . liability for sexual harassment in the workplace. . . .  With respect to liability under section 51.9, which covers a wide variety of business relationships outside the workplace,

11

the relevant inquiry is whether the alleged sexually harassing conduct was sufficiently pervasive or severe as to alter the conditions of the business relationship." (*Id.* at p. 1048, italics omitted.)

### 3. *Retroactivity of civil statutes*

"Whether a statute should apply retrospectively or only prospectively is, in the first instance, a policy question for the legislative body enacting the statute. [Citation.] Thus, where a statute provides that it clarifies or declares existing law, '[i]t is obvious that such a provision is indicative of a legislative intent that the amendment apply to all existing causes of action from the date of its enactment.' " (*Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 244.)

Accordingly, civil "statutes do not apply retroactively unless the Legislature clearly indicated otherwise." (*Phillips v. St. Mary Regional Medical Center* (2002) 96 Cal.App.4th 218, 229 (*Phillips*).) One reason for this "presumption against retroactive application" of civil statutes, is a concern that "the parties' rights and obligations that exist[ed] before the statute's adoption" will be impacted. (*Id.* at pp. 229-230.)

## C. *Analysis*

### 1. *Parties' arguments on appeal*

Berkery contends the trial court "erred in granting the demurrer on all causes of action," but presents specific argument only as to the claims of sexual harassment and failure to prevent sexual harassment.[3]

---

[3] Berkery is silent regarding the trial court's dismissal of her third claim (for breach of the implied covenant of good faith and fair dealing). As for her fourth claim (intentional infliction of emotional distress), Berkery presents only the undeveloped assertion that the claim does "not have the same elements" as, and is "not co-dependent" with, her other claims. Berkery has forfeited any challenge to the trial court's dismissal of those two claims. (See *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830.)

12

Regarding the sexual harassment claim, Berkery contends the 2019 version of Civil Code section 51.9 applies to this case, but that under even the earlier version, "sufficient facts were alleged in [the TAC] to rebut the demurrer." Regarding the claim of failure to prevent sexual harassment, Berkery contends the TAC "pled sufficient facts to establish a claim under Government Code section 12940(j)," that VEG failed to prevent Thompson's creation of a hostile work environment.[4]

VEG argues as a threshold matter that in light of a local rule of the trial court, and because (after issuance of the trial court's tentative rulings) Berkery requested a hearing only on her claim under Government Code section 12940 for failure to prevent sexual harassment, Berkery "waived her right to appeal the trial court's ruling as to th[e] other causes of action."

On the merits, VEG argues Berkery failed to state a claim for sexual harassment under Civil Code section 51.9, for multiple independent reasons: (i) the trial court correctly ruled it was dispositive that Berkery was the provider of services to VEG, rather than the recipient of services; (ii) the 2018 version of the law applies, and the TAC "included no allegations to establish that [Berkery] could not easily terminate the relationship" with VEG, a necessary element of the 2018 version of the law; and (iii) Thomson's conduct was not severe or pervasive.

---

[4] Though liability for sexual harassment under Government Code section 12940, subdivision (j)(1) " 'encompasses individual supervisory employees' " (*Caldera v. Department of Corrections & Rehabilitation* (2018) 25 Cal.App.5th 31, 38; cf. Gov. Code, § 12940, subd. (j)(3) ["[a]n employee . . . is personally liable for any harassment prohibited by this section that is perpetrated by the employee"]), Berkery does not pursue that line of argument in her appeal. Rather, she limits briefing on her Government Code section 12940 claim to VEG's liability for failing to prevent sexual harassment, and limits briefing on her sexual harassment claims against Thompson and VEG to Civil Code section 51.9.

13

As for the claim of failure to prevent sexual harassment under Government Code section 12940, VEG argues the absence of a viable sexual harassment claim precludes a claim of failure to prevent sexual harassment.

Thompson argues Berkery failed to state a claim against him for sexual harassment under Civil Code section 51.9, because their professional relationship "was not a 'qualifying relationship' within the terms of the statute," as it "did not match any of the relationships" in the illustrative list of the 2018 version of the statute. Thompson "provided no services." Rather, it was Berkery who "was an independent contractor providing services in a manner expressly under her own control."

2. *Disagreeing with the trial court's construction of Civil Code section 51.9 and with VEG's forfeiture argument, we conclude as follows:*

Berkery did not forfeit the right to appeal any aspect of the trial court's ruling. We find unpersuasive VEG's contention that, by failing to request (pursuant to local rule)[5] oral argument on the court's tentative ruling on the Civil Code section 51.9 claims, Berkery forfeited an appellate challenge to that ruling. The cases VEG cites in support of the proposition are inapposite.

*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, stands for the proposition that "judicial litigation of the merits of arbitrable issues . . . waives a party's right to arbitration." (*Id.* at p. 188, italics omitted.) *In re Marriage of Hinman* (1997) 55 Cal.App.4th 988, applies the broad proposition that "fail[ure] . . . to raise . . . arguments below," in the trial court "thereby waiv[es] [the] right to" raise the arguments

---

[5] VEG does not ask us to take judicial notice of "Local Rule 1.06" of the trial court. Instead VEG quotes *part* of it to us, and observes that "[n]otice of this rule . . . [was] included in the Notice of Demurrer . . . ."

According to VEG, the local rule provides in part that the " 'tentative ruling shall become the ruling of the court, unless a party desiring to be heard so advises the department clerk . . . and further advises the clerk that such party has notified the other side of its intention to appear."

14

on appeal. (*Id.* at p. 1002.) Neither case stands for the proposition that a party who files an opposition to a demurrer but does not request oral argument on a tentative ruling sustaining the demurrer, as contemplated by local rule, thereby forfeits the right to appeal a ruling sustaining the demurrer. And our own independent research found no such principle in California courts. (Cf. *Gilberd v. AC Transit* (1995) 32 Cal.App.4th 1494, 1500 ["oral argument with respect to . . . motions is clearly collateral to the merits of the motions"].)

Further, we do not read the language of the local rule (as quoted by VEG)[6] as suggesting forfeiture *on the merits* of a ruling.

Local rules like the one VEG purports is at issue here promote both judicial economy and preservation of litigant resources by reducing oral argument calendars. Even when a party believes its position is sound, the party reasonably may decide to waive oral argument in light of a tentative ruling. (Cf. *People v. Pena* (2004) 32 Cal.4th 389, 400 ["tentative opinion[s] . . . streamline the oral argument process by . . . in many cases, enabling counsel to determine that requesting oral argument . . . is not likely to be fruitful and may not be a wise use of available resources" (fn. omitted)].)

But if waiving oral argument were to result in forfeiture on the merits, no rational party would waive oral argument, thereby frustrating judicial economy. (*People v. Hazle* (2007) 157 Cal.App.4th 567, 573 [construing a statute to avoid "an absurd waste of judicial resources"].)

3. *Senate Bill No. 224's changes to Civil Code section 51.9 are not retroactive.*

Berkery has provided nothing to suggest the Legislature clearly indicated that its changes to Civil Code section 51.9, via Senate Bill No. 224, should apply retrospectively.

---

**6**     That language is consistent with rule 3.1308(a)(1) of the California Rules of Court, which permits a trial court to "offer[ ] a tentative ruling," and inform the parties that "[t]he tentative ruling will become the ruling of the court if the court has not directed oral argument by its tentative ruling and notice of intent to appear has not been given."

15

Indeed, far from indicating that Senate Bill No. 224's changes to the language of Civil Code section 51.9 were mere clarifications or declarations of existing law (cf. *Western Security Bank v. Superior Court, supra*, 15 Cal.4th at p. 244), the Legislature indicated it *wanted substantively to change the law*. (Sen. Rules Com., Off. of Sen. Floor Analyses, analysis of Sen. Bill No. 224 (2017-2018 Reg. Sess.) as amended August 23, 2018, pp. 2-3 [explaining substantive changes to § 51.9, including "[r]emov[ing] the requirement in existing law for a plaintiff . . . to prove that there is an inability by the plaintiff to easily terminate the relationship"].)[7]

Thus, the presumption against retroactive application of Senate Bill No. 224's changes to Civil Code section 51.9 applies, and the 2018 version of the law governs this appeal.[8] (See *Phillips, supra*, 96 Cal.App.4th at p. 229.)

Berkery's contention that the 2019 version of Civil Code section 51.9 applies "because the statute did not substantially affect" the parties' "existing rights and obligations," is unpersuasive. Senate Bill No. 224 *did* affect the parties' rights, by expanding defendants' potential liability under statutory law to cases of sexual harassment of an independent contractor *even when* the plaintiff independent contractor *can* easily terminate the relationship. (See *Phillips, supra*, 96 Cal.App.4th at pp. 229-230 [because the relevant statutory "amendments substantially affect[ed] defendant's liability

---

[7] On our own motion, we take judicial notice of the legislative history discussed in this opinion. (Evid. Code, §§ 452, 459; *People v. Indiana Lumbermens Mutual Ins. Co.* (2010) 49 Cal.4th 301, 309, fn. 6.)

[8] Berkery does not argue on appeal that her Civil Code section 51.9 sexual harassment claims concern any conduct that defendants engaged in after the 2019 version of the law became effective (though she alluded to that notion in her oppositions to the demurrers in the trial court). Further, a claim of retaliation for complaining about sexual harassment is distinct from an underlying claim of sexual harassment. (See *Mathieu v. Norrell Corp.* (2004) 115 Cal.App.4th 1174, 1188; accord *Soria v. Univision Radio Los Angeles, Inc.* (2016) 5 Cal.App.5th 570, 585, fn. 4.)

16

under FEHA," plaintiff's claim of wrongful discharge claim would be cognizable only if the provisions had retroactive application].)

4. *Berkery did not plead an "inability to easily terminate the relationship" as required to establish liability for sexual harassment under Civil Code section 51.9, subdivision (a)(3) in effect at the time of the relevant events.*[9]

Here, Berkery was the owner and operator of a marketing consulting firm; had been doing business in the City of Elk Grove since 2013; and signed a contract in August 2018 to provide her services to VEG. The contract (attached as an exhibit to the TAC) provided: Berkery was an "independent contractor" who had "the sole right to control the means, manner and method by which the services" would "be performed" under the agreement; either party could terminate the agreement "at any time by giving 21 days' written notice to the other party"; the written contract was "the entire [a]greement" between the parties, and could be "modified only by a writing signed by both parties."

On August 26, 2018, Thompson sent a romantically suggestive text message to Berkery, and then apologized for the text. On September 14, 2018, Berkery declined Thompson's invitation to go on a date with him. On October 20, 2018, after they attended a costume ball together, Thompson: (i) told Berkery he was in love with her, (ii) wondered aloud how he could get her to look at him the way she looked at a man that she danced with during the ball that night, and (iii) asked Berkery to explain her rejection of his advances. Berkery said she did not "want to date anyone" at the moment. Several hours later, Thompson sent a text message to Berkery describing her as "the hottest girl in the room"; reminded her that he was "only 10 minutes away and would love nothing

---

**9**    Though the trial court did not reach this issue (and though Berkery does not brief it), we may affirm on this ground, which both defendants raised in their demurrers. (*Krolikowski v. San Diego City Employees' Retirement System, supra*, 24 Cal.App.5th at p. 549; see *People v. Alice* (2007) 41 Cal.4th 668, 679 ["The parties need only have been given an opportunity to brief the issue decided by the court, and the fact that a party does not address an issue . . . that is raised or fairly included within the issues raised does not implicate the protections of [Government Code] section 68081"].)

17

more than" "just to hold" her; and emphasized that "none of th[at] mean[t] [they] [could not] work together for a very long time." In an October 24, 2018 phone conversation, Berkery reiterated to Thompson that she did not want to date him, and indicated she would end the business relationship with VEG unless Thompson ceased pursuing her. Thompson asked Berkery to go on a date with him twice more via November 2018 text messages.

In a January 2019 e-mail asking Berkery to "stay on" for "about three more weeks," Thompson told Berkery it was " 'time to move on' " from the business relationship, because Berkery recently had been " 'out of line' " in her professional dealings with VEG and Thompson. In response, Berkery accelerated to seven days Thompson's proposed timeline for the conclusion of the contract between Berkery and VEG, which averaged monthly billings of $3,200 for Berkery's services

This is not a well-pleaded "inability by the plaintiff to easily terminate the relationship."[10] (Former Civil Code, § 51.9, subd. (a)(3).) Without more, the contention that Berkery did not want to "lose [an] important client" like VEG does not suggest an inability to easily terminate the relationship, especially in light of Berkery's decision to accelerate the timeline of the conclusion of the contract. That VEG was "important" to Berkery is a conclusion without any factual detail. (See *Kim v. Westmoore Partners*, *Inc., supra*, 201 Cal.App.4th at p. 281; *Folgelstrom v. Lamps Plus, Inc.* (2011) 195 Cal.App.4th 986, 993 ["This is a . . . conclusion of fact which we may disregard on review of a demurrer"].) Similarly, without more, the assertion that Berkery billed VEG $3,200 a month on average for her services does not suggest an inability to easily terminate the relationship.

---

**10** We emphasize that the ease with which a plaintiff could terminate a relationship under former Civil Code section 51.9 is distinct from the question of the level of impropriety of the conduct itself.

18

Berkery's observation that "[a]n 'inability to easily terminate the relationship' is a fact-intensive analysis" is accurate, as far as it goes.[11]  But it does not address the threshold requirement that a plaintiff satisfactorily *plead* such an inability.

Thus, assuming without deciding the TAC satisfactorily pleaded (a) a cognizable relationship (former Civ. Code, § 51.9, subd. (a)(1)(F)), (b) that Thompson's unwelcome advances were "sexual advances, . . . of a hostile nature based on gender, [and] were . . . pervasive or severe" (*id*. at subd. (a)(2)), and (c) that Thompson's conduct caused "economic loss or disadvantage or personal injury" (*id.* at subd. (a)(4)), we conclude the TAC did *not* contain a well-pleaded "inability by [Berkey] to easily terminate the relationship" (*id.* at subd. (a)(3)).

Accordingly, the trial court properly sustained defendant's demurrers to Berkery's claims of sexual harassment under Civil Code section 51.9.

*5.  Because Berkery does not state a claim of sexual harassment under Civil Code section 51.9, her claim for failure to prevent sexual harassment under Government Code section 12940 necessarily fails.*

" '[T]here's no logic that says an employee who has not been discriminated against can sue an employer for not preventing discrimination that didn't happen, for not having a policy to prevent discrimination when no discrimination occurred . . . .' Employers should not be held liable to employees for failure to take necessary steps to prevent such conduct, *except where the actions took place* and were not prevented. . . . Also, there is a significant question of how there could be legal causation of any damages (either compensatory or punitive) from such a statutory violation, where the only jury finding was the failure to prevent actionable harassment or discrimination, which,

---

[11]    Berkery's citation to unpublished opinions in support of this proposition is not appropriate; rather, it is prohibited except in very narrow circumstances, none of which apply here.  (Cal. Rules of Court, rule 8.1115.)  We admonish counsel for Berkery not to include such citations in any briefs in future litigation.

however, *did not occur*." (*Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 289, italics added.)

The same reasoning applies here, where an independent contractor sued an employer for failure to prevent sexual harassment of the independent contractor by an employee.

Accordingly, because Berkery did not state a viable sexual harassment claim, her claim against VEG under Government Code section 12940 for failure to prevent sexual harassment, also was not viable.

*6. The trial court did not abuse its discretion in denying leave to amend.*

We discern no separate developed argument in Berkery's briefing challenging the trial court's decision denying leave to amend her claims. Thus, Berkery has not carried her burden to " 'show in what manner [she] can amend [her] complaint and how that amendment will change the legal effect of [her] pleading.' " (*Green Valley Landowners Assn. v. City of Vallejo* (2015) 241 Cal.App.4th 425, 432.) Accordingly, we conclude the trial court did not abuse its discretion by sustaining defendants' demurrers without leave to amend.

DISPOSITION

The judgments are affirmed. Defendants shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

/s/
RAYE, P. J.

We concur:

/s/
HULL, J.

/s/
DUARTE, J.