[No. A066735. First Dist., Div. One. July 20, 1995.]

FATMEH BADIH, Plaintiff and Respondent, v.
LEONARD MYERS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II.B through II.E.

■■■■■■
■■■■■■■■■■■■■

### COUNSEL

Moore & Moore and Howard Moore, Jr., for Defendant and Appellant.

Robert H. Blumenthal for Plaintiff and Respondent.

### OPINION

**DOSSEE, J.**—Defendant Leonard Myers (Myers) appeals from a judgment in favor of plaintiff Fatmeh Badih (Badih) on her cause of action for wrongful discharge in contravention of public policy. In its special verdict, the jury found that Myers had terminated Badih's employment because she was pregnant. On appeal, Myers contends that the judgment must be reversed because there is no fundamental public policy prohibiting discrimination on the basis of pregnancy by employers who are not subject to the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.). We disagree and affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On June 25, 1990, Badih filed a complaint against Myers alleging, among other things, that Myers had discriminated against her on the basis of race and pregnancy. The complaint also alleged that Badih had attempted to file a complaint with the Department of Fair Employment and Housing but that the department had refused to accept the complaint because Myers employed less than five people.[1]

At trial, Badih gave the following testimony: In January 1987, Badih, a recent immigrant from the West African nation of Sierra Leone, began working as a medical assistant in the offices of Myers, a medical doctor. About nine months later, she started dating Constantine Kalaveras. Myers, who disapproved of interracial relationships, referred to Kalaveras as "the White guy."

In December 1988, Badih married Kalaveras. When Badih told Myers about the marriage, "[h]e slapped on the table, stood up, and started yelling and hollering about what a mistake I've made, how much I'm going to regret this, and how disappointed he is in me, that he's never seen an African that . . . came to this country and started, you know, doing things I did, you

---

[1]The FEHA defines an employer as a person "regularly employing five or more persons." (Gov. Code, § 12926, subd. (d).) The parties agree that Myers does not regularly employ five or more persons and, hence, is not subject to the FEHA.

know, hanging—marrying my husband and all that, having a White boy-friend and finally marrying him. [¶] And he gave me long lectures how marriages like that don't last and how they end up in tragedy and it's very bad, especially if children[] get involved and all that, and [he] just [got] so upset."

On September 6, 1989, Badih told Myers that she was pregnant. According-ing to Badih, Myers replied, " 'I just can't believe you. I just don't know what to say to you anymore. It seems like everything I ever told you just went right in vain. [F]irst you introduce me to this White guy, and then you marry him, and then you're having his baby. What's next? I can't take this anymore. If you told me you were going to get married and have babies, I wouldn't have hired you in the first place. I need an office girl when I need her, not a person that has responsibilities the way you do now. And . . . I am just so sorry, but I don't think I can take this anymore. You're going to have to go.' " Badih asked Myers whether he was serious. He told her that he was and that her last day would be September 15. On September 13, Myers threatened to call security if Badih did not leave immediately. Badih complied.

Myers denied that he had fired Badih because she was pregnant. According-ing to Myers, Badih quit her job.

Following its deliberations, the jury found that Myers had not terminated Badih's employment on the basis of race but that he had terminated her employment on the basis of pregnancy. The jury awarded $20,226 in dam-ages to Badih. The trial court subsequently granted Badih's motion for attorney fees. Myers has filed timely notices of appeal from both the judgment and the attorney fees order.

## II. DISCUSSION

### A. *Wrongful Discharge in Contravention of Public Policy*

■ The principles governing a cause of action for wrongful discharge in contravention of public policy are well established. "An action in tort seeking damages for discharge from employment in contravention of public policy is an exception to the general rule, now codified in Labor Code section 2922, that unless otherwise agreed by the parties, an employment is terminable at will." (*Jennings* v. *Marralle* (1994) 8 Cal.4th 121, 129 [32 Cal.Rptr.2d 275, 876 P.2d 1074], fn. omitted.) An employee is entitled to maintain such a tort action "where an employer's discharge of [the] em-ployee contravenes the dictates of fundamental public policy. [Citations.]"

(*Rojo* v. *Kliger* (1990) 52 Cal.3d 65, 89 [276 Cal.Rptr. 130, 801 P.2d 373].) "[C]ourts in wrongful discharge actions may not declare public policy without a basis in either constitutional or statutory provisions." (*Gantt* v. *Sentry Insurance* (1992) 1 Cal.4th 1083, 1095 [4 Cal.Rptr.2d 874, 824 P.2d 680], italics omitted.)

Myers contends that the judgment must be reversed because he is not subject to the FEHA, which he asserts contains the only constitutional or statutory provisions prohibiting discrimination in employment on the basis of pregnancy. (See Gov. Code, §§ 12926, subd. (o), 12940, 12945.) Myers relies on the California Supreme Court's recent decision in *Jennings* v. *Marralle*, *supra*, 8 Cal.4th 121. In *Jennings*, an age discrimination case, the court considered "whether an employee to whom [FEHA] remedies are not available because her employer does not regularly employ five or more persons [(see *ante*, fn. 1)] may, nonetheless, maintain a common law tort action for damages for wrongful discharge in violation of the public policy stated in [the FEHA]." (8 Cal.4th at p. 124.) The court concluded that the "exemption of small employers from the FEHA ban on age discrimination was enacted simultaneously to, and is inseparable from, the legislative statement of policy. For that reason, *and because no other statute or constitutional provision bars age discrimination*, . . . there presently exists no 'fundamental policy' which precludes age discrimination by a small employer. Thus, there is no independent basis for an action for tortious discharge in violation of policy." (*Id.* at p. 125, italics added.) Badih argues that *Jennings* is distinguishable on the ground that pregnancy discrimination in employment is a form of sex discrimination and, as such, is prohibited not only by the FEHA but also by article I, section 8 of the California Constitution.[2] For the reasons discussed below, we agree.

The question of whether pregnancy discrimination in employment is a form of sex discrimination is not without controversy. In *Geduldig* v. *Aiello* (1974) 417 U.S. 484 [41 L.Ed.2d 256, 94 S.Ct. 2485], the United States Supreme Court, in the context of the equal protection clause of the United States Constitution, concluded that "[w]hile it is true that only women can become pregnant, it does not follow that every legislative classification concerning pregnancy is a sex-based classification . . . . Normal pregnancy is an objectively identifiable physical condition with unique characteristics. Absent a showing that distinctions involving pregnancy are mere pretexts designed to effect an invidious discrimination against the members of one sex or the other, lawmakers are constitutionally free to include or exclude

---

[2]California Constitution, article I, section 8, provides as follows: "A person may not be disqualified from entering or pursuing a business, profession, vocation, or employment because of sex, race, creed, color, or national or ethnic origin."

pregnancy from the coverage of legislation such as this on any reasonable basis, just as with respect to any other physical condition. [¶] The lack of identity between the excluded disability [pregnancy] and gender as such under this insurance program becomes clear upon the most cursory analysis. The program divides potential recipients into two groups—pregnant women and non-pregnant persons. While the first group is exclusively female, the second includes members of both sexes. The fiscal and actuarial benefits of the program thus accrue to members of both sexes." (*Id.* at pp. 496-497, fn. 20 [41 L.Ed.2d at p. 265].) In *General Electric Co.* v. *Gilbert* (1976) 429 U.S. 125, 133-140 [50 L.Ed.2d 343, 352-357, 97 S.Ct. 401], the court extended the reasoning of *Geduldig* to employment discrimination cases brought under title VII of the Civil Rights Act of 1964, 42 United States Code section 2000e et seq. (Title VII).

Both the California Legislature and the United States Congress reacted swiftly to the *Gilbert* decision. In 1978, the California Legislature amended the Fair Employment Practices Act (later recodified as the FEHA) to add a provision specifically prohibiting pregnancy discrimination in employment. (See former Lab. Code, § 1420.35, now Gov. Code, § 12945; see generally, *Review of Selected 1978 California Legislation* (1978) 10 Pacific L.J. 463-464.) The provision states that it "shall not be construed to affect any other provision of law relating to sex discrimination or pregnancy." (Former Lab. Code, § 1420.35, subd. (d), now Gov. Code, § 12945, subd. (d).) Also in 1978, the United States Congress amended Title VII to provide that "[t]he terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions." (42 U.S.C. § 2000e(k).) "When Congress amended Title VII in 1978, it unambiguously expressed its disapproval of both the holding and the reasoning of the Court in the *Gilbert* decision." (*Newport News Shipbuilding & Dry Dock* v. *EEOC* (1983) 462 U.S. 669, 678 [77 L.Ed.2d 89, 99, 103 S.Ct. 2622]; see also *California Federal S. & L. Assn.* v. *Guerra* (1987) 479 U.S. 272, 284-285 [93 L.Ed.2d 613, 625-626, 107 S.Ct. 683]; *Johnson Controls, Inc.* v. *Fair Employment & Housing Com.* (1990) 218 Cal.App.3d 517, 534-535 [267 Cal.Rptr. 158].)

The California Fair Employment and Housing Commission (Commission), which performs rulemaking and adjudicatory functions under the FEHA, has also concluded that pregnancy discrimination in employment is a form of sex discrimination. California Code of Regulations, title 2, section 7291.2, subdivision (d), promulgated in 1980, provides that "[d]iscrimination because of pregnancy, childbirth or related medical conditions constitutes sex discrimination under Government Code section 12940," an FEHA provision prohibiting, among other things, sex discrimination in employment. The Commission's precedential decisions are in accord. (See *Dept.*

*Fair Emp. & Hous.* v. *Save Mart* (1992) No. 92-01, FEHC Precedential Decs. 1992-1993, CEB 1, p. 8; *Dept. Fair Emp. & Hous.* v. *Globe Battery* (1987) No. 87-19, FEHC Precedential Decs. 1986-1987, CEB 9, p. 8.)

In 1990, the California Legislature codified the Commission's understanding, amending the FEHA to provide that " '[s]ex' includes, but is not limited to, pregnancy, childbirth, or medical conditions related to pregnancy or childbirth." (See Gov. Code, former § 12926, subd. (j), now § 12926, subd. (o).) The amendment expressly states that it "does not constitute a change in, but is declaratory of, existing law." (Stats. 1990, ch. 15, § 3, No. 1 Deering's Adv. Legis. Service, p. 88.) Simultaneously, the Legislature amended Government Code section 12945, the FEHA provision prohibiting pregnancy discrimination in employment. The amendment states that section 12945 "shall not be construed . . . in any way to diminish the coverage of pregnancy, childbirth, or medical conditions related to pregnancy or childbirth under any other provisions of [the FEHA], including subdivision (a) of [Government Code] Section 12940," which, as noted above, prohibits sex discrimination in employment.

With this background in mind, we turn to the question at hand—namely, whether pregnancy discrimination is a form of sex discrimination under article I, section 8 of the California Constitution. The only court to have addressed this question directly is a federal district court, which answered it affirmatively.[3] (See *Merrell* v. *All Seasons Resorts, Inc.* (C.D.Cal. 1989) 720 F.Supp. 815.) We agree with that court's conclusion. With the exception of the United States Supreme Court's roundly disapproved decision in *General Electric Co.* v. *Gilbert, supra,* 429 U.S. 125, the statutes, regulations, and decisions discussed above strongly support the notion that pregnancy discrimination in employment should be treated as a form of sex discrimination. Although much of this authority arises in the context of the FEHA and Title VII, there is no reason why a different *definition* of sex discrimination should be applied in the context of article I, section 8. (See *Rojo* v. *Kliger, supra,* 52 Cal.3d at p. 73, fn. 4 and p. 90 [relying on FEHA regulations and precedential decisions to conclude that sexual harassment is a form of sex discrimination under article I, section 8].)

---

[3] In *Arriaga* v. *Loma Linda University* (1992) 10 Cal.App.4th 1556 [13 Cal.Rptr.2d 619], the Fourth District declined to consider the question of whether pregnancy discrimination is a form of sex discrimination under article I, section 8 of the California Constitution because the plaintiff had abandoned her article I, section 8 cause of action. (10 Cal.App.4th at pp. 1559-1560, fn. 3 and p. 1561, fn. 5.) Other California decisions, although not addressing the question directly, suggest that it should be answered affirmatively. (See, e.g., *Gunn* v. *Employment Development Dept.* (1979) 94 Cal.App.3d 658, 663 [156 Cal.Rptr. 584] ["[W]e shall assume that, at least under California constitutional law, inquiry into the existence and effect of pregnancy is discriminatory under the rationale that only women can become pregnant. (See *Sail'er Inn, Inc.* v. *Kirby* (1971) 5 Cal.3d 1, 20 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351].)"].)

In short, we conclude that pregnancy discrimination is a form of sex discrimination under article I, section 8 of the California Constitution. Since article I, section 8 expresses a fundamental public policy against sex discrimination in employment (*Rojo* v. *Kliger, supra,* 52 Cal.3d at pp. 90-91), Badih was properly allowed to maintain her cause of action for wrongful discharge in contravention of public policy.

B.-E.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

## III.  DISPOSITION

The judgment is affirmed, with costs to Badih.

Strankman, P. J., and Stein, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 19, 1995.

*See footnote, *ante,* page 1289.