**NGUYEN THI NGA et al., Plaintiffs,**

**v.**

**DAEWOOSA SAMOA, LTD. et al., Defendants.**

High Court of American Samoa
Trial Division

CA No. 133-99
CA No. 68-99

October 23, 2003

Before RICHMOND, Associate Justice, ATIULAGI, Associate Judge, and TAUANU'U, Temporary Associate Judge.

Counsel: For Vietnamese Plaintiffs, Virginia Sudbury and Christa Tzu-Hsiu Lin
For Chinese Plaintiffs, Afoa L. Su'esu'e Lutu and Deanna Sanitoa
For Defendants, Aitofele T. Sunia

### ORDER DENYING MOTION TO TERMINATE PREGNANT PLAINTIFFS, RETURNING THEM TO WORK AND ADJUDGING CONTEMPT

#### Current Procedural Events

On August 16, 2000, Vietnamese plaintiffs ("plaintiffs") again asked the Court to hold defendants Daewoosa Samoa, Ltd. ("Daewoosa") and Ku - Soo Lee ("Lee") (together "defendants") in contempt and require defendants to abide by certain orders entered in this case. On August 24, 2000, defendants sought permission to terminate three pregnant plaintiffs and return them to Vietnam. Both motions were heard on September 22, 2000.

On September 26, 2000, plaintiffs requested, yet again, that we find defendants in contempt for allegedly labeling the eight plaintiffs who attended the September 22, 2000 hearing "troublemakers" and refusing to put them back to work. The hearing on this motion was held on September 29, 2000.

Finally, on October 5, 2000, plaintiffs appealed to the Court to hold defendants in contempt for failing to put five plaintiffs, including three pregnant plaintiffs, back to work. We heard this motion on October 10, 2000.

## Discussion

The Court has issued various orders that are relevant to the August 16, September 26, and October 5, 2000 contempt applications. These orders enjoined defendants from: (1) terminating the sponsorship of plaintiffs without affording them an opportunity to consult with their attorneys and to appear before the Immigration Board ("December 29, 1999 order"); (2) preventing plaintiffs from working at Daewoosa because they are plaintiffs in this action ("April 4, 2000 order"); and (3) pressuring plaintiffs to terminate or in any other manner preventing or discouraging any of them from prosecuting these actions ("July 14, 2000 order"). The three orders were duly and regularly made. Defendants had knowledge of the three orders and ability to comply with them.

### A. Labeling of Plaintiffs and Termination of Sponsorship

The evidence received at the September 22, 2000 hearing established that, by letter dated August 15, 2000 ("August 15th letter"), Lee, on Daewoosa's behalf, requested the Immigration Board to terminate Daewoosa's sponsorship of 38 plaintiffs. The listed plaintiffs were described as "problem workers" for various reasons cited on a list that defendants posted at Daewoosa's premises. The reasons remain unproven. Lee attended the Board's hearing on the matter on August 16, 2000. Defendants argue that, in contacting the Immigration Board, they merely intended to ask for the Board's guidance regarding certain incidents of public criticism of their operations. Again, however, the incidents of criticism remain unproven. Moreover, the plain terms of the August 15th letter belie this claim and illustrate that defendants' real purpose was to terminate Daewoosa's sponsorship of the listed plaintiffs.

After attending the September 22, 2000 hearing, plaintiffs Dung Thi Minh Tam, Bui Binh Hung, Nguyen Ban Bhanh, Dong Thi Hao, Ngo Thu Hang, Truong Le Quyen, Nguyen Thi Time Dung, and Nguyen Thi Thanh Thuy were labeled "troublemakers" and not permitted to return to work when Daewoosa resumed operations during the week of September

173

25, 2000. At the September 26, 2000 hearing, defendants failed to proffer any reasonable explanation for this failure. Accordingly, we specifically ordered defendants to return all plaintiffs to work on the following Monday, October 2, 2000.

In publishing derogatory labels of certain plaintiffs as "problem workers" and "troublemakers" on two separate occasions, defendants willfully and contemptuously violated the April 4, 2000 order and July 14, 2000 order. In referring Daewoosa's sponsorship of those plaintiffs to the Immigration Board for termination without affording them opportunity to consult with their counsel, defendants willfully and contemptuously violated the December 29, 1999 order.

## B. Pregnancy Discrimination

On September 26, 2000, we also ordered defendants to assign plaintiffs to alternative work if any of them were unable to perform work duties due to pregnancy. However, defendants failed to return three pregnant plaintiffs, Nguyen Thi Hanh, Do Thi Kim Thuy, and Cao Thi Thuy (together "pregnant plaintiffs") back to work, or assign them alternative work. The pregnant plaintiffs are the subject of defendants' motion to terminate plaintiffs due to pregnancy. This issue was first taken up at the September 22, 2000 hearing and again at the October 10, 2000 hearing.

The issue of whether defendants may legitimately terminate or restrict employment of plaintiffs solely because they are pregnant is of first impression before this Court. Defendants have a policy, at least implicitly, to terminate female employees who become pregnant.[1] The fundamental issue at this juncture of the proceedings is whether defendants' no tolerance for pregnancy policy is permissible under the laws of American Samoa.

Many states prohibit employers from discharging or restricting employment agreements for reasons that will contravene public policy.[2]

---

[1] Although defendants deny entering any written contracts with their employees or with the two employment agencies in Vietnam procuring the employees, a written employment contract was admitted into evidence at the October 10, 2000 hearing. The contract states in pertinent part: "If employee . . . female employee [sic] getting pregnant during working period, they will be dismissed." (Ex. 1 at 7.) However, none of the three pregnant plaintiffs are parties to this contract or any other known contract. Regardless, elicited testimony from both Lee and Soliai demonstrate that defendants have a policy to terminate employees once they become pregnant.

[2] Generally, these principles have been applied in tort actions for wrongful discharge. Nonetheless, where defendants' intolerance for

174

Public policy must be clearly established by statute or constitution. Both local and federal law have been recognized as valid public policy sources in wrongful discharge claims. *See Green v. Ralee Eng'g Co.*, 960 P.2d 1046, 1056, 1061 (Cal. 1998) (finding that federal regulations are a valid public policy basis if consistent with authorizing statute); *Faulkner v. United Techs. Corp.*, 693 A.2d 293, 295 (Conn. 1997) (allowing public policy based upon federal law even though the plaintiff failed to allege any specific connection between the federal statute and the policy of the state); *Badih v. Myers*, 36 Cal. App. 4th 1289 (Cal. App. Ct. 1995) (finding public policy against pregnancy discrimination in state constitution and federal law).

In *Badih*, the California court allowed an employee, who was discharged on account of her pregnancy, to maintain a cause of action as a violation of California's public policy against pregnancy discrimination. *See generally Badih*, 36 Cal. App. 4th 1289. Analyzing both amendments to Title VII and California constitutional provisions, the *Badih* court found a fundamental public policy against pregnancy discrimination. *See id.*

### 1. *American Samoa Rules Support Anti-Pregnancy Discrimination Public Policy*

██ American Samoa's administrative rules, having the force and effect of law, protect pregnancy-related illness. Government employees are entitled to "earn sick leave at the rate of 4 hours or ½ workday for each full biweekly pay period." A.S.C.A. § 4.0506(a)(1). The rules recognize that "incapacitation related to pregnancy and confinement" is a disability that is chargeable to accrued sick leave. A.S.A.C. § 4.0506(c).

██ Pregnancy-related disability is also excepted from the strict requirement that absent proof of illness, sick leave may only be granted for up to three days. If the due date of birth is medically certified, maternity leave is liberally allowed for up to six weeks prior and six weeks subsequent to birth. *See* A.S.C.A. § 7.1202(b); A.S.A.C. §§ 4.0506(c), 4.0509(b).

██ These administrative rules applied in American Samoa's cultural context, which promotes the *aiga* or family well-being, clearly demonstrate a territorial public policy in favor of protecting the working mother-to-be against discrimination based on pregnancy.

### 2. *Title VII Protects against Pregnancy-Related Discrimination in the Workplace*

---

pregnancy policy is a matter of public concern, these principles are applicable to the case at bar.

In 1978, in reaction to the Supreme Court's decision in *General Electric v. Gilbert*, 429 U.S. 125 (1976), that pregnancy discrimination was not sex discrimination, Congress passed the Pregnancy Discrimination Act ("PDA"), which explicitly banned pregnancy discrimination. 42 U.S.C. § 2000e(k); see *Newport NewsSipbuilding and Dry Dock Co. v. E.E.O.C.*, 462 U.S. 669 (1983) (finding employer's health plan, which afforded less protection to pregnantspouses, violated PDA); *California Federal Sav. and Loan Ass'n v. Guerra*, 758 F.2d 390 (9th Cir 1985).

> When Congress amended Title VII in 1978, it unambiguously expressed its disapproval of both the holding and the reasoning of the Court in the *Gilbert* decision.

*Badih*, 36 Cal. App. 4 at 1294 (citations omitted).

The PDA amended the terms "because of sex" or "on the basis of sex" in Title VII of the Civil Rights Act of 1974 to include "because of or on the basis of pregnancy, childbirth, or related medical conditions," and provides that "women affected by pregnancy, childbirth, or related medical conditions *shall be treated the same for all employment-related purposes*, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k) (emphasis added). In *California Federal Sav. and Loan Ass'n*, 758 F.2d 390, the Court, in upholding a California statutory provisions allowing employees up to four moths leave for pregnancy related illness held that the PDA required states to provide equal employment opportunities to pregnant women.

> By making pregnancy a substitute for sex in Title VII's antidiscrimination mandate, Congress procured forpregnancy that which it had already procured for sex: a guarantee against discrimination of all varieties, including facially neutral policies with a disparate impact.

*Id.* at 396 (citation omitted).

■ The trend in federal law towards explicitly protecting pregnancy classifications at work as sex-based discrimination, and guaranteeing equal employment opportunity of pregnant workers, illustrates a clear public policy against employment discrimination based on pregnancy. The administrative rules of American Samoa are consistent with this policy.

■ Based upon Title VII and the Territory's regulatory scheme, American Samoa has formulated a public policy against pregnancy discrimination in the workplace. On its face, defendants' no tolerance for pregnancy policy discriminates against the pregnant plaintiffs on

account of their pregnancy. Unless defendants can demonstrate a legitimate interest in their policy, which interest can not be achieved through a variety of less drastic, and sexually neutral means, defendants' guidelines are an infringment on American Samoa policy, and are therefore, impermissible. At the October 10, 2000 hearing, defendants suggested but failed to present any convincing evidence that they had a legitimate safety concern for the pregnant plaintiffs that could not be addressed by assigning them alternative duties.

Like defendants' other actions, the motivation for their refusal to permit the pregnant plaintiffs to work comes across as an effort to discourage them from pursuing this action simply because they are plaintiffs, again in violation of the April 4, 2000 order and July 14, 2000 order. Therefore, we will deny the motion to terminate the pregnant plaintiffs and hold defendants incontempt once more for not returning them back to work.

## Order

1. Defendants' motion to terminate the pregnant plaintiffs and return them to Vietnam is denied.

2. Defendants shall put the pregnant plaintiffs back to work, retroactively with pay from October 2, 2000. If for some legitimate reason they cannot perform their normal duties due to their pregnancy, defendants shall assign them to alternative duties, without any loss of pay.

3. For the reason stated above, defendants are adjudged in contempt of court for their violations of the Court's orders of December 29, 1999, April 4, 2000, and July 14, 2000.

4. In light of defendants' constant failure to heed this Court's orders, and the non-deterring effect of previously imposed sanctions, it appears that we must resort to the severe penalty of imprisonment and more substantial fines before defendants will begin to take the Court's orders seriously. Accordingly, Lee is sentenced to imprisonment for 10 days at the Tafuna correctional facility. Lee and Daewoosa are also each fined $10,000.

5. In addition, defendants shall pay, not later than seven days after the entry of this order, directly to Virginia L. Sudbury and Christa Tzu-Hsiu Lin, plaintiffs counsel, $1,000.00, as and for-attorney's fees and costs incurred in these contempt proceedings.

6. We will give defendants one final chance to demonstrate their willingness to toe the line and comply with the Court's orders. Execution of Lee's term of imprisonment and each of the defendants'

fines is suspended on condition that they comply with all orders of the Court in this action, including but not limited to timely payment of the $1,000.00, as and for attorney's fees and costs incurred in these contempt proceedings, to plaintiffs' counsel.

It is so ordered.

