Filed 6/27/24

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| ERIKA PALENY, | C097584 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2019-00270758-CU-WT-GDS) |
| v. | |
| FIREPLACE PRODUCTS U.S., INC., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Richard K. Sueyoshi, Judge. Affirmed.

Law Offices of J. David Nick and J. David Nick for Plaintiff and Appellant.

Littler Mendelson, Barbara A. Blackburn, John H. Adams, Jr., and Douglas L. Ropel for Defendants and Respondents.

1

Appellant Erika Paleny sued respondents Fireplace Products U.S., Inc. (Fireplace Products), and Sabah Salah (collectively, respondents), arguing that she experienced harassment, discrimination, and retaliation after she informed her manager, Salah, that she would be undergoing oocyte (egg) retrieval procedures to both donate and freeze eggs for herself for potential use at some unknown time in the future. The superior court granted respondents' motion for summary judgment based on its finding that the egg retrieval and freezing procedures did not qualify as a pregnancy-related medical condition or disability and were, therefore, not protected by the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).[1] Paleny appeals, arguing the superior court's ruling erroneously construed the relevant statutes to deny her protection under the FEHA. We affirm.

## LEGAL AND FACTUAL BACKGROUND

The complaint alleged that appellant began working for respondents as a full-time administrative assistant in May 2018. In October 2018, appellant informed respondents that she had begun procedures necessary for egg retrieval. Appellant underwent these procedures from October of 2018 through her termination in February 2019.

In November 2018, appellant's supervisor, Salah, informed appellant that she disapproved of the procedures. According to appellant, Salah then harassed appellant for needing time off for the procedures. Appellant claimed she expressed disagreement with Salah's position, which further created hostility in the workplace.

In early February 2019, appellant informed Salah that she would need additional time off for another appointment related to her procedures. Appellant alleged Salah became angry, and appellant's employment was terminated.

---

[1] Undesignated statutory references are to the Government Code.

The complaint asserted the following 10 causes of action: (1) declaratory relief; (2) harassment based on sex (pregnancy) in violation of the FEHA; (3) discrimination based on sex (pregnancy) in violation of the FEHA; (4) disability discrimination in violation of the FEHA; (5) failure to accommodate in violation of the FEHA; (6) failure to engage in the interactive process in violation of the FEHA; (7) failure to prevent discrimination, harassment, and retaliation in violation of the FEHA; (8) retaliation in violation of the FEHA; (9) violation of the Pregnancy Disability Leave Law (§ 12495); and (10) wrongful termination in violation of public policy. All of these causes of action were asserted against Fireplace Products, and the first, second, ninth, and 10th causes of action were also asserted against Salah.

Respondents moved for summary judgment on the primary ground that appellant could not establish that she had a characteristic protected by the FEHA because she was never pregnant or attempting to get pregnant, nor was she disabled, during her employment with respondents. Appellant opposed the motion, arguing that freezing her eggs for potential future use qualified as a pregnancy "related medical condition."

Respondents relied on the following relevant undisputed material facts.[2] Appellant's employment was at-will and began in May 2018, and she was terminated in February 2019. During her employment with respondents, appellant was not pregnant, was not trying to become pregnant, and did not have a disability. Appellant did not disclose that she was pregnant or had a disability to her supervisor. Appellant's "egg donation appointments were outside of work hours and she did not request any accommodation, leave of absence, or sick time relating to a pregnancy or disability during her employment."

---

[2] These undisputed material facts were relied upon by the superior court in granting summary judgment and are not challenged on appeal.

3

In her deposition, appellant testified that during late September or early October 2018, she discussed with Salah her need for time off. At the time, appellant was "preplanning" and "was in the process of considering doing an egg donation." Appellant told Salah that she could get paid $8,000 for the egg donation. She was also "potentially planning on freezing some of [appellant's] own eggs for future pregnancy due to the fact that [at] my age, my eggs were at their best quality at that point." Appellant explained that she would have to attend early morning appointments in the Bay Area "for the donation and the consideration of freezing my own eggs." Appellant told Salah that she needed to be able to start her workday 15 to 20 minutes later than normal on occasions where she had those early morning appointments. Salah gave appellant a "scolding face," and said that she did not want appellant talking about the subject of egg donation in the office; Salah felt it was inappropriate and against what she personally believed in.

In early February 2019, appellant informed Salah that she had one last appointment related to her egg retrieval and would need to come in late on the Friday of that week. Salah became upset and terminated appellant's employment later that day.

Appellant admitted she never requested a leave of absence for a medical condition, nor did she ever need a full day off in the egg retrieval process. She also admitted that although she had to take injections to prepare for the procedure that made her nauseated, she did not consider that a disability and she was able to work through it. Nor did she have any other medical condition that impacted her ability to work.

The superior court granted respondents' motion in its entirety. The court framed the primary inquiry as follows—whether the "FEHA's protections extend to the medical procedures [appellant] underwent in order to donate her eggs to others and freeze them for her own possible pregnancy at some unknown time in the future." After reviewing the FEHA's text, its supporting regulations, and case authority, the superior court found that "an indirect connection between the medical procedures [appellant] elected to undergo to freeze her eggs for a possible pregnancy at some time in the future is

4

insufficient to state a claim for pregnancy harassment or pregnancy discrimination under FEHA" because appellant "cannot establish she suffered from a pregnancy related medical condition." The superior court also determined that appellant could not establish that she was disabled or had engaged in protected activity under the FEHA.

## DISCUSSION

Appellant argues that the superior court interpreted the FEHA too narrowly, improperly excluding future pregnancies from the provisions that prohibit an employer from discriminating, harassing, or terminating an employee for a medical condition or disability related to pregnancy. According to appellant, the egg retrieval procedure constitutes a medical condition related to pregnancy, and the superior court's reliance upon the fact that appellant was not pregnant, nor trying to become pregnant, while she was employed by respondents, was prejudicial error eliminating protections otherwise provided by the statute and leading to absurd results.

### I

*Standard of Review*

Summary judgment is properly granted if "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment can meet its burden by showing that the plaintiff cannot establish one or more elements of a cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).) "Once defendants meet this burden, the burden shifts to plaintiff to show the existence of a triable issue of material fact." (*Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 253.) A triable issue of material fact exists if the evidence and inferences therefrom would allow a reasonable juror to find the underlying fact in favor of the party opposing summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, 856.)

Here, the superior court's order granting summary judgment is subject to de novo review; the parties have stipulated to the relevant facts and the issues before us are

5

questions of statutory interpretation. (*MacIsaac v. Waste Management Collection & Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1081-1082; see also *Regents of University of California v. Superior Court* (1999) 20 Cal.4th 509, 531 [appellate court exercises de novo review of ruling on summary judgment motion and underlying statutory construction issues].)  Although we review the superior court's decision de novo, we do not ignore that decision.  Instead, that decision is presumed correct, and it is the plaintiff's burden to affirmatively establish reversible error.  (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609; *Swigart v. Bruno* (2017) 13 Cal.App.5th 529, 535.)  We may affirm a ruling granting a motion for summary judgment "if it is correct on any ground, regardless of the trial court's stated reasons." (*Truck Ins. Exchange v. County of Los Angeles* (2002) 95 Cal.App.4th 13, 20.)

All of appellant's 10 causes of action rely or depend upon a pregnancy-related theory of sex discrimination and/or harassment.  Accordingly, we must first consider whether the superior court correctly determined that, under the undisputed facts, appellant's egg retrieval procedure was not entitled to protection under the FEHA.

II

*Analysis*

" 'A fundamental rule of statutory construction is that a court should ascertain the intent of the Legislature so as to effectuate the purpose of the law.  [Citations.]  In construing a statute, our first task is to look to the language of the statute itself.  [Citation.]  When the language is clear and there is no uncertainty as to the legislative intent, we look no further and simply enforce the statute according to its terms.  [Citations.]  [¶]  . . . "We are required to give effect to statutes 'according to the usual, ordinary import of the language employed in framing them.'  [Citations.]"  [Citations.]  " 'If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose.' " ' " (*Phelps v. Stostad* (1997) 16 Cal.4th 23, 32.)

6

The FEHA prohibits employment discrimination based on various protected classifications, including sex and physical disability. (§ 12940 et seq.; see also Cal. Const., art I, § 1.) In 2019, when appellant filed her complaint, section 12940, subdivision (a) stated, in relevant part, that it is unlawful for an employer to refuse to hire, discharge, or discriminate in terms of employment "because of . . . physical disability, mental disability, medical condition, . . . [or] sex."[3] Section 12926, subdivision (r) defines " '[s]ex' " as used in section 12940 as including, among others, "pregnancy or medical conditions related to pregnancy." (§ 12926, subd. (r); Cal. Const., art I, § 8; see, e.g., *Badih v. Myers* (1995) 36 Cal.App.4th 1289, 1295.)

Section 12945 of the FEHA, known as the Pregnancy Disability Leave Law (PDLL), is based on the federal Pregnancy Discrimination Act (PDA) (42 U.S.C. § 2000e(k)) and ensures equal employment opportunity by affording specific protections for pregnant employees. (*Williams v. MacFrugal's Bargains - Close-outs, Inc.* (1998) 67 Cal.App.4th 479, 483 (*Williams*); *Badih v. Myers, supra*, 36 Cal.App.4th at p. 1294.) Section 12945 supplements provisions of sections 12926 and 12940 that apply to pregnancy-related medical conditions by delineating additional employment practices that are unlawful "unless based upon a bona fide occupational qualification." (§ 12945, subd. (a).)

Section 12945 addresses two distinct protections available to employees disabled by or in need of accommodation due to pregnancy, childbirth, or a related medical condition. First, employees disabled by such a condition are entitled to pregnancy-related disability leave. Specifically, it is unlawful for an employer to refuse to allow an employee disabled by pregnancy, childbirth, or a related medical condition to take a leave

---

[3] The statute has since been amended to include protection for "reproductive health decisionmaking." (See § 12940, subd. (a), as amended through Sen. Bill No. 523 (2021-2022 Reg. Sess.), effective Jan. 1, 2023.)

of absence for a reasonable period, not to exceed four months. (§ 12945, subd. (a)(1).) Second, section 12945 entitles an employee to accommodation "for a condition related to pregnancy, childbirth, or related medical condition" if such accommodation is requested by the employee and recommended by her health care provider. (§ 12945, subd. (a)(3)(A).) In short, "section 12945 affords important protections to employees affected by pregnancy, over and above the protections of section 12940." (*Lopez v. La Casa de Las Madres* (2023) 89 Cal.App.5th 365, 381.)

In order to claim entitlement to the protections afforded under section 12940 et seq. and to ultimately prevail on her claims, appellant must show she was subject to unlawful employment practices due to her sex (pregnancy) or physical disability. Under section 12945, the employee must establish that she is either "disabled by pregnancy . . . or related medical condition" or that, with the advice of her health care provider, she requested reasonable accommodations "for a condition related to pregnancy . . . or related medical condition." We conclude that, as a matter of law, appellant cannot meet her burdens. Fatal to appellant's claims are the undisputed facts that she was not pregnant and has not identified a medical condition or disability related to pregnancy.

*A. Appellant was not pregnant, nor disabled by pregnancy.*

All of appellant's causes of action derive from the contention that she was either pregnant or was disabled by pregnancy. Neither is the case. First, it is undisputed that appellant was not pregnant during the term of her employment with respondents. As a result, appellant cannot show, at the time of her discharge, she was discriminated, harassed, or terminated because of pregnancy, as alleged in the second and third causes of action. (Cf. *Trop v. Sony Pictures Entertainment, Inc.* (2005) 129 Cal.App.4th 1133, 1145 ["An employee cannot make out a prima facie case of discrimination based on pregnancy under FEHA in the absence of evidence the employer knew the employee was pregnant"].)

Nor can she show that she was "disabled by pregnancy" under the PDLL. (§ 12945, subd. (a)(1).) The Fair Employment and Housing Commission (the Commission) has defined several terms, such as "disabled by pregnancy" and we will defer to its definition. (*Judson Steel Corp. v. Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 668 [requiring deference to an administrative agency's interpretation of a statute unless it is clearly erroneous].) According to the Commission, "[a] woman is 'disabled by pregnancy' if, in the opinion of her health care provider, she is unable *because of pregnancy* to work at all or is unable to perform any one or more of the essential functions of her job or to perform these functions without undue risk to herself, to her pregnancy's successful completion, or to other persons." (Cal. Code Regs., tit. 2, § 11035, subd. (f), italics added.) Because appellant admits she was not pregnant at the time of her discharge, she cannot show she was "disabled by pregnancy." Moreover, there is no evidence that appellant's health care provider gave advice or recommendation as to her inability to perform one or more of the essential functions of her job (Cal. Code Regs., tit. 2, § 11035, subd. (f)), and appellant did not consider herself unable to do so, nor did she request leave or other accommodations. Thus, the evidence showed that appellant was not disabled by pregnancy. Summary judgment was thus appropriate on appellant's ninth cause of action, alleging that she was disabled by pregnancy and improperly denied a leave of absence in violation of the PDLL. (§ 12945; See *Williams, supra*, 67 Cal.App.4th at p. 483 [§ 12945 " 'is narrowly drawn to cover only the period of *actual physical disability* on account of pregnancy, childbirth, or related medical conditions' "].)

In addition, under the general FEHA provisions, " '[p]hysical disability' " includes "any physiological disease, disorder, condition . . . or anatomical loss" that both affects one or more defined body systems and limits a major life activity or any "other health impairment . . . that requires special education or related services." (§ 12926, subd. (m).) Because appellant did not disclose a disability and did not have any condition that

impacted her ability to work or that required the use of leave, sick time, or other accommodation, her pregnancy disability claims made under the general FEHA provisions also fail. (See *Sanchez v. Swissport, Inc.* (2013) 213 Cal.App.4th 1331, 1341 [§ 12940, subd. (m) mandates that an employer provide reasonable accommodations for the known physical disability of an employee].) Accordingly, we conclude that appellant cannot show, as a matter of law, that she suffered from a pregnancy-related disability or that she was discriminated against on that basis, nor denied accommodation, as alleged in the third and fourth causes of action. (See § 12940, subd. (a).)

For those same reasons, appellant cannot make a prima facie case that her employer failed to accommodate a disability under the FEHA, as alleged in the fifth cause of action, because she cannot establish that she is disabled under the FEHA. (§ 12940, subd. (m); *Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245, 256; *Deschene v. Pinole Point Steel Co.* (1999) 76 Cal.App.4th 33, 44.) Similarly, we find that appellant cannot show that respondents impermissibly failed to engage in the interactive process, since she admitted she did not inform respondents that she had a disability and there are no facts leading to a triable issue as to whether respondents regarded her as having one. (§ 12940, subd. (n); see *Moore v. Regents of University of California* (2016) 248 Cal.App.4th 216, 243 [a plaintiff "need only be regarded by the employer as having [a disability], to be able to make out claims under section 12940, subdivisions (m) and (n)"]; *Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1013 [" 'Where the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, . . . the initial burden rests primarily upon the employee . . . to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations' "].)

*B. Appellant was not suffering from a medical condition related to pregnancy.*

Appellant has also not shown that at the time of her employment, she was experiencing a pregnancy-related medical condition. In arguing to the contrary, appellant

10

focuses on the phrase "related to" and contends that phrase should be given the broadest interpretation such that it includes *medical procedures* related to potential pregnancies and specifically provides protection for those "who may need an egg freezing medical procedure." (See *Williams, supra*, 67 Cal.App.4th at p. 482 [" ' "Related" is a generous choice of wording, suggesting that interpretation should favor inclusion rather than exclusion in the close case' "].) Appellant's argument seeks to expand the definition of "related medical condition" to include medical procedures that may tend toward future pregnancies. We decline to do so on this record. The plain language of the statute provides protections for *medical conditions* related to pregnancy or childbirth, and therein lies the proper focus. As we explain, under appellant's circumstances, the egg retrieval procedure does not constitute a medical condition related to pregnancy under the FEHA.

The Commission has defined a " 'related medical condition' " as "any medically recognized physical or mental condition related to pregnancy, childbirth or recovery from pregnancy or childbirth. This term includes, but is not limited to, lactation-related medical conditions such as mastitis; gestational diabetes; pregnancy-induced hypertension; preeclampsia; post-partum depression; loss or end of pregnancy; or recovery from loss or end of pregnancy." (Cal. Code Regs, tit. 2, § 11035, subd. (u).) The Commission also defines " 'condition related to pregnancy, childbirth, or a related medical condition,' " as "a physical or mental condition intrinsic to pregnancy or childbirth that includes, but is not limited to, lactation." (Cal. Code Regs., tit, 2, § 11035, subd. (d).) Appellant's circumstances are not of the same ilk as these examples.

Appellant correctly notes that the above list is nonexclusive. She further argues that many of the foregoing conditions listed in the above-cited regulations occur while an employee is not pregnant nor trying to get pregnant and could even be remote in time from a pregnancy. Thus, appellant argues, the related condition need not be directly linked to a current or imminent pregnancy, as the trial court found. (Cf. *Williams, supra*, 67 Cal.App.4th at p. 484 ["a medical disability is not protected by the PDA unless there is

11

a direct link between the medical condition and the employee's pregnancy"].) Appellant may be technically correct that a woman may suffer certain medical conditions related to pregnancy, such as postpartum depression or mastitis, while not pregnant nor trying to become pregnant. But the statute clearly requires the presence of a medical condition related or intrinsic to pregnancy to trigger the protections under the FEHA. Appellant has not identified such a condition.

Appellant also argues that because the PDA provides broad protection to apply to potential pregnancies, we should follow suit. (See *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354 ["Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying our own statutes"].) In particular, appellant cites to federal cases that hold "the PDA applies to discrimination based upon intended or potential pregnancy . . . and . . . infertility is a pregnancy-related condition for purposes of the PDA." (*Erickson v. Bd. of Governors of State Colleges* (N.D.Ill. 1995) 911 F.Supp. 316, 319; see also, e.g., *Pacourek v. Inland Steel Co.* (N.D.Ill. 1994) 858 F.Supp. 1393, 1403 [employee undergoing in vitro fertilization treatments protected by the PDA because "potential-pregnancy-related medical conditions should be treated like pregnancy-related medical conditions for purposes of the PDA"]; *Zatarain v. WDSU-Television, Inc.* (E.D.La. Mar. 9, 1995, No. 94-1018) 1995 U.S.Dist. LEXIS 2944, *1-2 [pregnancy-related conditions, such as infertility, are protected under the PDA]; *Cleese v. Hewlett-Packard Co.* (D.Or. 1995) 911 F.Supp. 1312, 1318 ["the purpose of the PDA is best served by extending its coverage to women who are trying to become pregnant"].) Appellant argues that for the same reasons that federal courts have recognized infertility as a condition protected under the PDA,[4] so too should we consider egg retrieval and storage

---

[4] As respondents note, however, not all federal courts agree that infertility treatments qualify for protection under title VII of the Civil Rights Act of 1964

for possible future use as a pregnancy-related medical condition. Appellant argues that "a woman's need to undergo a medical procedure to extract eggs and freeze them for a future unplanned pregnancy" fits readily into a reasonable definition of "pregnancy, childbirth, or a related medical condition." We need not wrestle with defining the protections afforded to infertility or in vitro fertilization treatments through the FEHA because, in this case, there is no evidence, nor a reasonable inference, that appellant was undergoing the egg retrieval procedure because she was experiencing infertility or some other medical condition that necessitated the procedure in order for her to become pregnant. In fact, she has never identified, nor provided any evidence of, a medical condition that gave rise to her "need to undergo [the] medical procedure" at issue. Indeed, her reason for extracting her eggs at that time was for donation and to store some for possible future use because the eggs were at their peak quality. We see a distinction between a medical procedure related to possible future pregnancy and the pregnancy-related medical condition contemplated in the statute. Again, there is no evidence that appellant was pregnant, infertile, or addressing some other medical condition. She was undergoing an elective medical procedure but, without an underlying medical condition related to pregnancy, appellant does not have a protected characteristic under the FEHA.

Appellant's reliance on recent amendments to section 12940 do not assist her. The Legislature recently enacted Senate Bill No. 523 (2021-2022 Reg. Sess.), effective on

---

(42 U.S.C. § 2000e et seq.) and, specifically, the PDA (42 U.S.C. § 2000e(k)). (See *Saks v. Franklin Covey Co.* (2d Cir. 2003) 316 F.3d 337, 346 ["for a condition to fall within the PDA's inclusion of 'pregnancy . . . and related medical conditions' as sex-based characteristics, that condition must be unique to women" and infertility is a medical condition that is gender neutral]; *LaPorta v. Wal-Mart Stores, Inc.* (W.D.Mich. 2001) 163 F.Supp.2d 758, 770 ["Neither the language nor the legislative history of the PDA reflects an intent to cover infertility"]; *Krauel v. Iowa Methodist Medical Center* (8th Cir. 1996) 95 F.3d 674, 679-680 ["infertility is outside of the PDA's protection because it is not pregnancy, childbirth, or a related medical condition"], abrogated on other grounds in *Bragdon v. Abbott* (1998) 524 U.S. 624, 638.)

January 1, 2023, to include and define "reproductive health decisionmaking." (§§ 12926, subd. (y), 12940, subd. (a).) We first note that appellant fails to acknowledge, anywhere in her opening brief, that the amendments to section 12940 occurred long *after* both the conduct she complains of in this case and the trial court's summary judgment ruling. Thus, not only did she not argue this before the trial court, she could not have done so because it was not then the state of the law. Nonetheless, appellant cites to the recent amendment and argues that she was terminated because of her decision to use or access a particular medical service for reproductive health. She also argues that the Legislature's amendment conclusively establishes that appellant's egg retrieval process was a protected activity. (§ 12940, subd. (a).) Yet appellant does not provide any analysis or reasoning for the latter, and we thus disregard it. (See *Ewald v. Nationstar Mortgage, LLC* (2017) 13 Cal.App.5th 947, 948 ["We repeatedly have held that the failure to provide legal authorities to support arguments forfeits contentions of error"].) Appellant also does not address the retroactivity of this amendment other than to assert, in her reply brief, as she did at oral argument, that the amendment was a mere clarification of existing law, i.e., the forms of sex discrimination, and thus presents no question of retroactivity. As we have indicated, the issue of retroactivity was not addressed in her opening brief, and we thus find it forfeited. (See *WorldMark, The Club v. Wyndham Resort Development Corp.* (2010) 187 Cal.App.4th 1017, 1030, fn. 7 ["Arguments raised for the first time in the reply brief are untimely and may be disregarded"].)

      *C. Appellant cannot establish a claim for unlawful employment practices under the FEHA*.

The FEHA also prohibits employers from failing "to take all reasonable steps necessary to prevent discrimination and harassment from occurring." (§ 12940, subd. (k).) "It creates a separate actionable tort enforceable upon the establishment of the usual tort elements of duty of care, breach of duty (a negligent act or omission), causation, and damages." (*Dickson v. Burke Williams, Inc.* (2015) 234 Cal.App.4th 1307, 1313.)

"[C]ourts have required a finding of actual discrimination or harassment under FEHA before a plaintiff may prevail under section 12940, subdivision (k)." (*Carter v. California Dept. of Veterans Affairs* (2006) 38 Cal.4th 914, 925, fn. 4, citing *Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 283-284.) Because each of appellant's causes of action for harassment, discrimination, and retaliation fail as a matter of law, this dependent cause of action likewise fails.

In appellant's eighth cause of action, she alleged that her termination was in retaliation for requesting leave related to her pregnancy and pregnancy-related disability. The FEHA protects an employee from retaliation who has blown the whistle on an employer's discriminatory practice forbidden by section 12940, subdivision (a). One element of a FEHA retaliation cause of action is that the plaintiff engaged in a protected activity. (See § 12940, subd. (h); *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042.) An employee engages in protected activity when she or he has opposed any practices forbidden under the FEHA, or testified, or assisted in any proceeding under the FEHA. (§ 12940, subd. (h).) Here, because we have concluded that the egg retrieval procedure was not protected activity under the FEHA, appellant cannot establish a required element for retaliation.

Similarly, because each of appellant's causes of action for harassment, discrimination, and retaliation fail as a matter of law, appellant's dependent cause of action for declaratory relief likewise fails.

Finally, although the FEHA constitutes a public policy, "if an employer did not violate [the] FEHA, the employee's claim for wrongful termination in violation of public policy necessarily fails." (*Featherstone v. Southern California Permanente Medical Group* (2017) 10 Cal.App.5th 1150, 1169; see *TRW, Inc. v. Superior Court* (1994) 25 Cal.App.4th 1834, 1854 [same].) Here, because we have concluded that summary judgment was appropriately granted on appellant's other causes of action for

15

discrimination, harassment, and retaliation under the FEHA, this dependent cause of action also fails.

## DISPOSITION

The order granting summary judgment is affirmed.  Respondents shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)


/s/
EARL, P. J.


We concur:


/s/
KRAUSE, J.


/s/
BOULWARE EURIE, J.


16